KATHERINE CURTIS, as Administratrix of the Estate of SAMUEL CURTIS, Deceased, Appellant, v BROOKDALE HOSPITAL CENTER, Respondent.

Second Department, June 19, 1978

### APPEARANCES OF COUNSEL

*Goldstein & Goldstein (Arnold J. Goldstein* of counsel), for appellant.

*O'Connor, Hayes & Ryan (James E. Hayes* of counsel), for respondent.

### OPINION OF THE COURT

HOPKINS, J. P.

■ Two issues must be met on this appeal: (1) whether the plaintiff was prejudiced by the refusal of the trial court to permit questioning by her counsel of the physician member of the medical malpractice panel; and (2) whether the plaintiff, under the statute (Judiciary Law, § 148-a), had an unqualified right to question the physician on direct examination, where the panel had reached a recommendation favorable to her. Obviously, these issues are intertwined, but we need not address the second unless, in answer to the first, we find prejudice to the plaintiff from the trial court's refusal to permit the questioning. We hold that the plaintiff suffered prejudice from the court's ruling and that the plaintiff was entitled to examine the physician on her case.

On December 17, 1973, shortly after 11 P.M., the plaintiff's intestate fell in his home and struck the back of his head against a radiator. He was taken to the emergency room of the defendant, Brookdale Hospital Center, where the head injury, a bleeding and open lacerated wound of the occipital region, was treated. Neither a neurological examination nor other tests were conducted on the decedent at the time—that failure serves as the basis of this action. After treatment, the decedent left the hospital unassisted and returned home with his wife. Late the next morning she was unable to rouse him from his sleep. At about 2:50 P.M. he was returned to the defendant medical center by ambulance. He remained in a deep coma for about 11 days and then died.

Prior to the trial of this action, a medical malpractice panel consisting of a Supreme Court Justice, a neurologist and an attorney, was convened pursuant to subdivision 2 of section 148-a of the Judiciary Law. Based on written submissions, the

panel unanimously recommended that the defendant medical center was liable to the plaintiff for medical malpractice.

At the trial plaintiff called the panel's physican, Dr. Louis Greenstein, a neurologist, as a witness. The trial court limited the questioning of Dr. Greenstein to a recital of his qualifications and a bare statement of the panel's recommendation of liability. No questioning relating to the basis for the recommendation was allowed. The trial court, citing the statute, in effect, ruled that Dr. Greenstein could testify on direct only as to the recommendation of the panel and not as to the basis for the recommendation.

Section 148-a of the Judiciary Law provides for the establishment of a panel to facilitate the disposition of medical malpractice actions. In essence, subdivision 2 provides for a hearing before a panel consisting of a Supreme Court Justice, a physician and an attorney. The doctor and attorney are chosen from a list prepared by the Presiding Justice of each respective Appellate Division. The list of doctors is divided into specialities and is prepared with the assistance of the Medical Society of the State of New York, a county medical society and/or the New York Academy of Medicine; the attorneys selected must have trial experience, although it need not be confined to the field of medical malpractice (Judiciary Law, § 148-a, subd 2, pars [a], [b]). Any of the afore-mentioned medical organizations may be designated by an Appellate Division to review material submitted to the court, i.e., pleadings, bills of particulars and medical and hospital records, and designate the specialty involved and notify the court as to such designation (Judiciary Law, § 148-a, subd 3, par [b]).

Prior to the hearing, any party may object to the doctor or attorney who has been designated. Such objection shall be decided by the Justice presiding as a member of the panel (Judiciary Law, § 148-a, subd 2, par [d]). The hearing itself is informal and without a stenographic record. Except as otherwise provided, no statement or expression of opinion made in the course of the hearing is admissible either as an admission or otherwise in any trial of the action (Judiciary Law, § 148-a, subd 4). The portion of section 148-a which is relevant to the issue under discussion is subdivision 8, which provides:

"If the three members of the panel concur as to the question of liability, a formal written recommendation concerning such question of liability shall be signed by the panel members and forwarded to all parties. In such event, the recom-

mendation shall be admissible in evidence at any subsequent trial upon the request of any party to the action. The recommendation shall not be binding upon the jury or, in a case tried without a jury, upon the trial court, but shall be accorded such weight as the jury or the trial court chooses to ascribe to it.

"*If the recommendation is read to the jury or by the trial court, the doctor member or the attorney member of the panel, or both of them, may be called as a witness by any party with reference to the recommendation of the panel only.* The party calling such witness or witnesses shall pay their reasonable fees and expenses." (Emphasis supplied.)

We think that the limitation imposed by the trial court on the questioning of Dr. Greenstein created self-evident prejudice to the plaintiff's cause. The trial court did not allow any questioning relating to the basis for the recommendation reached by the panel. The result was that little or nothing was added to the knowledge which the jury already possessed concerning the panel's recommendation. Surely, the jury could assume that Dr. Greenstein was qualified, if only from the fact that he had been selected as a member of the panel. If the statute permits questioning with respect to the recommendation, as the plaintiff contends, the prejudice to the plaintiff is obvious and it cannot be said that the jury's verdict was not affected by the denial to the plaintiff of the right of examination. Indeed, the undue restriction of questioning of expert witnesses may be a ground for reversal under many circumstances (see, e.g., *McDermott v Manhattan Eye, Ear & Throat Hosp.,* 15 NY2d 20, 25-28).

The paramount issue is, therefore, whether the statute authorizes any party in a medical malpractice action to question the physician member of the panel. The statute itself could not be more explicit: "If the recommendation is read to the jury or by the trial court, the doctor member or the attorney member of the panel, or both of them, may be called as a witness by any party with reference to the recommendation of the panel only. The party calling such witness or witnesses shall pay their reasonable fees and expenses" (Judiciary Law, § 148-a, subd 8).

When a statute is unambiguous, we may not read into it conditioning language. "Courts, should not, however, add restrictions or limitations where none exist, nor should they interpret what has no need of interpretation. When words

have a definite and precise meaning, courts should not go elsewhere in search of conjecture so as to restrict or extend that meaning *(McCluskey v Cromwell,* 11 NY 593, 601)" *(Matter of Erie County Agric. Soc. v Cluchey,* 40 NY2d 194, 200; see, also, *Matter of Blyn v Bartlett,* 50 AD2d 442, 448, affd 39 NY2d 349).

Recently, we upheld the constitutionality of the statute *(Comiskey v Arlen,* 55 AD2d 304, affd 43 NY2d 696).[1] There is nothing in the legislative history to indicate a construction should be attributed to the statute which is contrary to its plain meaning.

The Legislature enacted section 148-a of the Judiciary Law in response to a growing dissatisfaction with the traditional methods of determining medical malpractice claims by jury trials. That dissatisfaction stemmed from the mounting number of such claims, the complexity of the issues and the potential size of the verdicts, all of which contributed to the reluctance of insurance carriers to risk coverage for physicians. The statute was intended to introduce into the process of litigation a stage of pretrial consideration in which representatives of the court, the legal profession and the medical profession would participate in evaluating the claim. "Apparently, the theory underlying the use of the panels is that the parties will be better equipped to negotiate a settlement, and under greater pressure to settle, if they are given a preliminary view of the merits of the case; the end result thus should be the same as that yielded by a panel with more extensive powers" (Comment, An Analysis of State Legislative Responses to the Medical Malpractice Crisis, 1975 Duke LJ 1417, 1456).[2]

The disposition of a malpractice claim is made easier if the recommendations of the panel are admissible at the trial and if the physician member is available as a witness at the trial (Medical-Legal Screening Panels as an Alternative Approach to Medical Malpractice Claims, Documentary Supplement, 13 Wm & Mary L Rev 695, 722). Undoubtedly, these advantages were considered by the Legislature in drafting section 148-a,

---

1. The Court of Appeals, in affirming, did not reach the question of constitutionality; it held that the question was unnecessary to decide, since the panel's recommendation might not be used at the trial.

2. Legislation similar to section 148-a of the Judiciary Law, with respect to the examination of the panel members as witnesses, is found in Indiana (Ind Stat Ann, § 16-9.5-9-9) and Louisiana (La Rev Stat Ann, § 40:1299.47).

which incorporates both of these features. The sole reservation to the untrammelled examination of the physician or attorney member of the panel is that their testimony shall be adduced "with reference to the recommendation of the panel only" (Judiciary Law, § 148-a, subd 8).

■ Thus, it follows that the recommendation is admissible in evidence at the trial and that both parties may interrogate the physician member with reference to the recommendation, whether the recommendation is favorable or unfavorable to the party calling the witness. The purpose and emphasis of the interrogation will, of course, differ between the parties, depending upon the complexion of the recommendation. Nevertheless, both the clear language of the statute and the evident legislative intent supporting its enactment are an unmistakable direction that either party may call the physician member of the panel as a witness with reference to the recommendation. The extent and duration of the examination of the witness will, of course, be subject to the discretion of the court, which should be properly exercised. Here, neither of these qualifications is a matter of dispute.

■ Since the plaintiff was precluded from pursuing an interrogation of the physician member of the panel to her prejudice, the judgment should be reversed and a new trial granted.

TITONE, J. (dissenting). In my opinion, the clause "with reference to the recommendation of the panel only", within the context of subdivision 8 of section 148-a of the Judiciary Law, means that in the event the malpractice panel promulgates an unanimous written recommendation as to liability, the physician or attorney member is restricted, on direct examination by the party calling him to rendering a confirmation that the contents of the writing are as stated therein, and that such is the panel's unanimous recommendation. The majority's determination in this case confers upon the physician and attorney panelists the status of expert witnesses, contrary to the thrust of subdivision 8 of section 148-a of the Judiciary Law.

Clearly, the legislative intent in enacting the section creating medical malpractice panels was not to set up a panel of witnesses with expertise in the field of medical malpractice, but rather, for the expeditious and informal resolution of medical malpractice actions (*Kletnieks v Brookhaven Mem. Assn.*, 53 AD2d 169; see, also, Governor Wilson's Memoran-

dum, NY Legis Ann, 1974, p 379). The role of the physician and attorney on the panel, together with the panel's jurist, is primarily to arrive at a conclusion after a hearing without stenographic minutes on the issue of liability. When the conclusion of all the members on that issue is unanimous, it is rendered in the form of a written recommendation, somewhat analagous to the role of a court-appointed referee who is directed to hear and report. Parenthetically, it should be noted that under express statutory provisions, the report of a referee is sometimes admissible in evidence at the ensuing trial, similar to the unanimous recommendation of the malpractice panel herein on the issue of liability (see *Clark v Turke,* 345 Mass 516; *Stockwell v Snyder,* 126 Tex 6; 76 CJS, References, § 149).

Essentially then, the physician or attorney serving on a malpractice mediation panel performs a quasi-judicial function. Having performed such a function at the time of the panel hearing, he should not, on the direct case of the party calling him, perform a function usually associated with that of an expert witness.

However, I am of the opinion that after the physician or attorney member of the panel testifies on direct examination for the party benefiting from the unanimous recommendation, the party adversely affected by such witness' reference to the recommendation may attempt to impeach its effect by, *inter alia,* an in depth cross-examination of such panelist (cf. *Morris v Phillips,* 165 Md 392; 76 CJS, References, § 149). As this court succinctly stated in *Kletnieks v Brookhaven Mem. Assn.* (53 AD2d 169, 174, *supra):* "section 148-a permits counsel to explore the claimed *underlying infirmities* of the nonbinding panel determination at the trial of the action (see Judiciary Law, § 148-a, subd 8)." (Emphasis supplied.) By a parity of reasoning, it follows that before an adverse party can effectively counteract the effect of the recommendation by adducing outside controverting evidence, such party must first be afforded the opportunity to cross-examine the panelist witness as to the underlying basis for the recommendation. Such cross-examination would, of course, be subject to the strictures set forth in subdivision 4 of section 148-a of the Judiciary Law, to wit, that no statement or expression of opinion made in the course of the panel's hearing shall be admissible, etc., at a trial of the action.

The contention of the plaintiff, that she was prejudiced by

the trial court's ruling limiting the scope of the examination of the physician member of the panel, is without merit. The record reveals that plaintiff was afforded the opportunity to swear Dr. Greenstein, the medical panelist, as a witness. The jury had an opportunity to see the physician who served on the panel, to observe, firsthand, his demeanor and deportment as a witness and to hear his educational background and qualifications as a neurologist. The unanimous recommendation of the panel was thus bolstered by the presence of Dr. Greenstein during the trial and the jury was made aware of his medical credentials and experience as a neurologist.

Accordingly, the plaintiff reaped the full and complete benefit of section 148-a of the Judiciary Law, since the written recommendation of the panel was received into evidence and the medical panelist who participated in reaching that recommendation was sworn as a witness and allowed to testify *"with reference to the* recommendation of the panel only" (Judiciary Law, § 148-a, subd 8 [emphasis supplied]).

Therefore, since the ruling of the trial court with respect to the proffered testimony of Dr. Greenstein was in accord with section 148-a of the Judiciary Law, and it cannot be said that the verdict of the jury could not have been reached upon any reasonable interpretation of the evidence, I would affirm the judgment.

HAWKINS and O'CONNOR, JJ., concur with HOPKINS, J. P.; TITONE, J., dissents and votes to affirm the judgment, with an opinion, in which LATHAM, J., concurs.

Judgment of the Supreme Court, Kings County, entered September 15, 1976, reversed, on the law, and new trial granted, with costs to abide the event.