OPINION OF THE COURT
Elizabeth W. Pine, J.
This is a posttrial motion by plaintiff to set aside a jury verdict of no cause of action, in a medical malpractice case, for alleged bias by a panel member, and for defendant’s alleged failure to furnish, in advance, all medical reports.
In this action, defendant was a podiatrist. The panel was made up of a Supreme Court Justice, an attorney and a podiatrist. An orthopedic surgeon acted as a consultant to the panel.
The panel was unanimous in finding no liability. The podiatrist member of the panel and the orthopedic surgeon, who was a consultant to the panel, were both called as defense witnesses. Absent the unanimous finding of the panel, neither of these witnesses for the defense could have been called.
During the trial, on cross-examination, the podiatrist member of the panel testified, in substance, that he had gone to the same podiatric school as the defendant and that they had been acquainted there, although they were not class mates. He further testified that he had occasional social contact with the defendant, that he had been entertained in the defendant’s home (although he had not entertained the defendant in his) and that he and the defendant had taken a 3- or 4-day trip together to a meeting of the House of Delegates of the State Podiatric Society some 4 or 5 years earlier.
Plaintiff had no earlier opportunity to question the panel member, and was not aware until cross-examination — after the malpractice panel result was in evidence and after the testimony of the member — that any personal relationship existed between the panel podiatrist and the defendant.
The role of the panel member is not clearly defined, but in the first stage it is certainly quasi-judicial. Thus it is appropriate to consider the standards that govern disqualification of a Judge.
Clearly, the mandatory statutory disqualification set forth in section 14 of the Judiciary Law is not applicable in this situation.
*240 However, the Canons of Judicial Conduct, canon 3(C.), provide for further circumstances in which a Judge should disqualify himself, as a matter of discretion, when his impartiality might reasonably be questioned. A nonexclusive list of examples is set out under that canon. This is a matter of conscience which the Judge himself can best resolve, motivated by a desire to remove the slightest possible impression on the part of any litigant that his decision might be influenced by his interest in or connection with the case. (1 Carmody-Wait 2d, NY Prac, § 3:29, pp 303-304.)
In the case of a Judge, this consideration is one of which he can be expected to be fully aware, and to weigh whenever circumstances arise that could possibly call it into play. There is nothing in section 148-a of the Judiciary Law or in the rules of this department concerning materials required to be furnished to a medical panel member, trained in a nonadversarial profession, that would direct that person’s attention to the possibility that he should disqualify himself. (See, e.g., 22 NYCRR 684.3 [h].) Were he under the same obligation as a Judge to consider the question it would be appropriate to defer to the panel member’s conscience, to the same extent as to a Judge’s. There the matter may be raised on appeal, and if bias is found, the next question is whether it affected the result. (1 Carmody-Wait 2d, NY Prac, § 3:29, p 304.)
Since, however, there is no mechanism to assure that the podiatrist panel member considered this issue before undertaking to serve, the court must evaluate his relationship.
The reported cases on this point are few in number and are distinguishable from this case. Kletnieks v Brookhaven Mem. Assn. (53 AD2d 169) involved a panel member and a defendant who were members of the same class at the same medical school and who both belonged to, and participated in meetings of, the Suffolk County Obstetrical and Gynecological Society. The court noted (p 177) that: "Such facts, standing alone, do not present a reasonable basis upon which an inference of impropriety may be predicated. Of necessity, members of the same medical specialty may oft times be members of the same county-wide and State-wide organizations. Courts have already noted the 'difficulty inherent in securing "independent” [medical] expert witnesses’ (McDermott v Manhattan Eye, Ear & Throat Hosp., 15 N Y 2d 20, 27, 28). If common membership in professional organizations be deemed sufficient to merit panel disqualification, the task *241 of obtaining independent medical evaluation will be rendered more difficult and would not serve the clearly expressed legislative intent.” On the other hand, in DeCamp v Good Samaritan Hosp. (66 AD2d 766), the court vacated a panel finding and required a new panel hearing where, after the panel’s determination, counsel for one of the defendants revealed that he or his firm was representing one of two doctors on the panel in an unrelated malpractice action. In vacating the panel finding, the Second Department disagreed with the Trial Judge, who held that it was up to the litigants to investigate the panelists for possible disqualification before the hearing. The Appellate Division ruling states (p 767) that: "In the absence of any indication to the contrary, a litigant is entitled to assume that a duly constituted judicial or administrative forum of justice passing upon his cause is wholly free, disinterested, impartial and independent.” The court observed that the relationship between the panelist and the defendant’s attorney was not casual or informal — "rather, it was the confidential relationship of client and attorney.” (66 AD2d, at p 767.) The court further stated that proof of actual bias was not the issue, but whether the circumstances would give the appearance of bias or be reasonably regarded as bias.
If the link of the panelist and the defendant through the attorney is fatal, it seems to this court that proof of a direct and substantial social relationship between the panelist and a litigant, in this case the defendant, must also be fatal. Whether or not actual bias exists, the plaintiff could reasonably be dubious. No proof of actual bias or harm as a result need be shown.
The Second Department cases cited above arose on challenges to a panel after its determination, but before trial. In this case, the trial is concluded, and a verdict of no cause for action was reached by the jury. The defendant argues that the jury was correctly charged with respect to consideration of the panel finding, and that, since the relationship of the panelist and the defendant was explored extensively on cross-examination, the jury took all this into account and its verdict should not be disturbed.
At the trial itself the panelists take on the role of expert witnesses. If that were their only role, surely the opportunity for cross-examination would suffice. However, they have been presented as having acted in a judicial role, and, it is only by virtue of that judicial role, and by their having achieved *242 unanimity therein, that the panelists are allowed to testify at all.
Under these circumstances, and fully mindful of the time and expense that has already been expended by everyone involved in this case, the court is constrained to conclude that, while the mechanics under section 148-a provided no earlier opportunity for plaintiff to discover the relationship, the social relationship between defendant and the panel member of this case created an impermissible appearance of impropriety. In the interest of justice a new panel must be convened and a new trial ordered.
With respect to plaintiff’s further claim that defendant failed to furnish all medical reports as required by section 148-a (subd 3, par [a]) of the Judiciary Law and 22 NYCRR 1028.3 (a), the court holds that the letter of June 13, 1978 to defendant’s attorney from Carl M. Harris, M. D., P. C. (one of defendant’s expert witnesses) did not constitute a medical report within the meaning of such provisions. The full text of the letter in question is as follows: "Dear Mr. Weegar, I have you[r] correspondence of June 8th, 1978, in which you ask if I would review Dr. Harary’s report. I have no specific comments to make on this. I don’t necessarily disagree with any of it. Was there any specific thing in the report that you would like me to discuss?” Defendant was not required to file this letter with the panel clerk and make it available to opposing counsel, and his failure to do so is not the basis for the decision of this court that a new panel must be convened and a new trial ordered.