■    CAROL A. CONKLIN, Individually and as Administratrix of the Estate of ROBERT E. CONKLIN, Deceased, Respondent, v MONTEFIORE HOSPITAL AND MEDICAL CENTER, et al., Respondents, and ETHICON, INC., Appellant.—Appeal from order, Supreme Court, Bronx County, dated September 13, 1979 and entered September 16, 1979, denying appellant Ethicon, Inc.'s motion to participate in all respects at the medical malpractice mediation panel hearing, is dismissed, with costs, and without prejudice to any contention that may be made on appeal from a judgment herein after trial. Appellant, a defendant in this action for wrongful death based on alleged medical malpractice and products liability, is sued on the theories of negligence, breach of warranty, and strict products liability, appellant having furnished allegedly defective suture materials. The Trial Term Justice refused to permit appellant to participate in the medical malpractice panel hearing under section 148-a of the Judiciary Law, except to the extent of permitting appellant's representative to be present thereat. The Court of Appeals has indicated its disapproval of direct appeals from pretrial orders in relation to medical malpractice panels saying with respect to a motion to suppress the recommendation of such a panel: "It was premature prior to trial, which might never take place, and which, if it does, might not give rise to considering the issue. And even if the issue arises, it might not result in prejudice to plaintiff." *(Comiskey v Arlen,* 43 NY2d 696, 697-698.) In the present case, the recommendation of the medical malpractice panel in fact

did "not result in prejudice to" appellant. The panel made no recommendation with respect to either the appellant's liability or the liability of the physician who it is alleged contended in his own defense that the suture material was defective. The Appellate Divisions have made different determinations as to whether appeals from rulings with respect to medical malpractice panels should be dismissed as nonappealable *(Marrico v Misericordia Hosp.,* 59 AD2d 680); or not appealable as of right but only by permission *(Kletnieks v Brookhaven Mem. Assn.,* 53 AD2d 169; see *Kletnieks v Brookhaven Mem. Assn.,* 63 AD2d 994); or whether the orders should be reviewed on the merits by affirmance or reversal (see, e.g., *Schwartz v Marcove,* 72 AD2d 709). In the present case, we are informed that at the time of oral argument the trial was already in its fifth week and that defendants' cases had already begun and the medical malpractice mediation panel's report received in evidence. Since then we have been informed that the jury has rendered its verdict finding appellant and certain other defendants liable. The practical effect of a ruling on the present appeal would be to determine whether the report of the medical malpractice mediation panel should or should not have been received at the trial—a question which will presumably come up on the appeal from the judgment, if there is one. The present appeal is thus somewhat analogous to an attempted appeal from a ruling made during the course of a trial; such appeals are uniformly dismissed. (See 7 Weinstein-Korn-Miller, NY Civ Prac, par 5701.04; *Matter of Skyliner Diner v Board of Assessors of County of Nassau,* 45 AD2d 712.) In the circumstances, we think dismissal of the appeal is the preferable course, without prejudice to any contention that may be made on the appeal from the judgment after trial. Concur—Sandler, J. P., Sullivan, Silverman and Carro, JJ.

Lupiano, J., dissents in a memorandum as follows: An order denying a party's motion to vacate the medical malpractice mediation panel's finding is not appealable as of right, and in this Department is not even appealable by permission *(Marrico v Misericordia Hosp.,* 59 AD2d 680). However, such order has been viewed as appealable by permission in other Departments (see *Murphy v Telesha,* 67 AD2d 701; *Kletnieks v Brookhaven Mem. Assn.,* 53 AD2d 169; see, also, *Musso v Westfield Mem. Hosp.,* 64 AD2d 851). As the instant matter does not involve an appeal from an order denying or granting a motion to vacate a finding by the medical malpractice mediation panel, but involves an issue as to whether a party to a malpractice action has the right to appear and participate in the informal hearing held by such panel, I perceive no constraint imposed on this court by its prior holding in *Marrico v Misericordia Hosp. (supra).* Similarly, *Comiskey v Arlen* (43 NY2d 696) does not stand for the *broad* proposition urged by the majority, to wit, Court of Appeals "disapproval of direct appeals from pretrial orders in relation to medical malpractice panels". *Comiskey* involves an endeavor by plaintiffs therein to suppress (i.e., to vacate) a malpractice panel finding (which determined that no malpractice was involved) on the constitutional ground that the statute (Judiciary Law, § 148-a) was violative of rights to due process and equal protection of the law. The Court of Appeals determined (p 697) that the motion to suppress, i.e., to vacate the panel's recommendation, was premature "prior to trial, which might never take place, and which, if it does, might not give rise to considering the issue." This result followed also from that court's apt recognition that constitutional issues should not be reached without some compelling factor warranting the court's confronting such issues. Therefore, it is quite clear that *Comiskey* and *Marrico* are analogous and that the issue presented by this

appeal was not involved in those cases. The public policy consideration and the constitutional aura attaching to defendant Ethicon, Inc.'s claim of entitlement to participation in the medical malpractice panel hearing fully warrant and mandate this court's confronting the issues raised by this appeal. Section 148-a of the Judiciary Law provides in subdivision 1 that "Each appellate division * * * shall establish * * * a medical malpractice panel or panels *to facilitate the disposition of medical malpractice actions"* and in subdivision 5 that *"All parties* shall be represented at the hearing by counsel authorized to act for their respective clients. If authority is not conferred, the plaintiff and a representative of the carrier so authorized must attend. Failing an appearance, the justice presiding may order an inquest, strike the case from the calendar, or make such direction as justice requires" (emphasis supplied). In a legislative memorandum in support of the statutory enactment (L 1974, ch 146, § 1), Governor Wilson declared, on April 9, 1974: "The bill amends the Judiciary Law to mandate Statewide the establishment of medical malpractice mediation panels, so-called 'Stevens Panels', *to speed up disposition of medical malpractice cases* throughout the State * * * Medical malpractice suits have become a problem of ever-increasing proportions in New York State. One innovative and promising concept brought to bear on this problem was the establishment * * * of a medical malpractice mediation panel in the First Judicial Department. The 'Stevens Panel' has proven to be *an excellent vehicle for bringing the parties together for informal discussion prior to actual litigation and utilization of this concept has enabled settlement of many cases and more expeditious trial of those that could not be settled"* (Governor's Memorandum on approving L 1974, ch 146, NY Legis Ann, 1974, p 379). It is clear, therefore, that the policy consideration underlying section 148-a of the Judiciary Law was the facilitation of the prompt disposition of medical malpractice actions whether by way of settlement or expeditious trial. As noted in *Kletnieks v Brookhaven Mem. Assn. (supra,* p 174): "The legislative intent underlying section 148-a is for an expeditious and informal resolution of the litigation" and further (p 176)—"The statute's plain words and its legislative history mitigate *against a technical and formalistic interpretation"* (emphasis supplied). Allusion has also been made to "the comprehensive nature of legislation" and its "broad language" as favorable to an expansive interpretation of the statute *(Musso v Westfield Mem. Hosp., supra,* pp 851-852). Indeed, this court has already noted the legislative intent for an expeditious and informal resolution of medical malpractice litigation *(Marrico v Misericordia Hosp., supra).* In following the thrust of the original legislation, a comprehensive act to amend the Public Health Law, the Insurance Law, and certain other laws, as well as the Judiciary Law, was enacted (L 1975, ch 109). Regarding the Judiciary Law, this bill provided that where all of the members of the three-member medical malpractice panel concur on the question of liability, the panel's recommendation on that issue is admissible in evidence at any subsequent trial. The Legislative Memorandum of the State Executive Department states "in support of the bill" that "The health and welfare of the people of this State are gravely threatened by the inability of health care providers to get malpractice insurance at reasonable rates * * * The bill provides a comprehensive approach to the medical malpractice insurance crisis. By * * * revising court procedures, the bill would assure more prompt and fair disposition of medical malpractice actions and thereby reduce insurance rates" (McKinney's Session Laws of NY, 1975, pp 1601-1602). Confronted by the public policy underlying section 148-a of the Judiciary Law, which is to

obtain prompt informal resolution, i.e., settlement of malpractice actions or failing that, to obtain expeditious clarification of the issues in such actions and prompt trials, I proceed to judicial construction of the statute. In engaging in this process, I am mindful of the tenet hereinabove set forth that the statute is to be broadly construed and interpreted to obtain its goal, and is not to be viewed in a strict, overly technical sense. Clearly, the statute mandates that all parties shall be represented at the medical malpractice panel hearing. The issue presented by this appeal is whether defendant Ethicon, Inc., the manufacturer of certain silk sutures used in open heart surgery, performed upon the decedent in this action brought to recover damages for his wrongful death and pain and suffering, is entitled to appear and participate in the panel hearing. This is an action for wrongful death as a result of the alleged negligence of the defendant Montefiore Hospital and Medical Center and defendant physicians, Pomerantz, Robinson, Rubin and Katz, and of the alleged breach of warranty and products liability of the defendants Ethicon, Inc., and Edward Laboratories, Inc. The complaint alleges that the decedent was hospitalized at Montefiore Hospital where he underwent an "open-heart" operation in which his diseased heart valve was replaced by an artificial heart valve manufactured by defendant Edward Laboratories, Inc. Subsequently, decedent was readmitted to the hospital when it was determined that the artificial heart valve previously implanted had "dehisced," i.e., separated from the walls of the heart to which it had been attached. The dehiscence necessitated a second open heart operation, which led to complications resulting in the decedent's death. Plaintiff claims that the sutures manufactured by defendant Ethicon, utilized in the first operation, were defective and thereby broke, causing the valve dehiscence. Plaintiff also claims that the physician defendants involved in the operations negligently performed the original and subsequent surgical operations and provided inadequate care and treatment. The hospital is alleged to have also failed in its duty of care toward decedent. As against defendant physician Rubin, it is alleged, *inter alia,* that he failed to diagnose and treat the spread of infection before and after the second operation. In general, it is alleged that all of the physician defendants were negligent in failing to diagnose and treat endocarditis of the prosthetic valve which led to the deterioration of the patient's condition and eventual death. As against defendant Robinson, chief of surgery at the hospital, it is alleged that in performing the original operation, he improperly selected sutures made of silk. In their answers, defendants Dr. Pomerantz, Dr. Robinson and Dr. Katz cross-claimed against the hospital, Ethicon and Edward Laboratories. Defendant Ethicon, the hospital and Dr. Rubin cross-claimed against all the other defendants. Ethicon's motion for an order granting it permission to participate at the malpractice panel hearing was opposed by plaintiff and all the other defendants, except Edward Laboratories. The motion was denied, except that Trial Term permitted Ethicon's attorney to be present at the hearing. Obviously, the parties to a medical malpractice action are entitled under the statute to be represented at the hearing by counsel, i.e., to be present and to participate. Is a defendant who is a named party in a malpractice action by virtue of a claim being asserted against that defendant not for medical malpractice, but for breach of warranty and products liability, similarly entitled to participate? The answer, I submit, is controlled by finding whether under all the circumstances, the malpractice claim and the products liability claim are *inextricably intertwined.* If they are inextricably intertwined, then common sense, pragmatic consideration and the policy underlying the statute dictate that the products liability

defendant be deemed not only a party in a malpractice action, but a party to the malpractice claim itself. Patently, if the intent underlying section 148-a of the Judiciary law is to obtain, if at all possible, prompt informal resolution of malpractice claims by way of settlement, then circumstances where a malpractice claim is inextricably intertwined with a products liability claim mandate participation, i.e., input from the products liability defendant. The reason for this conclusion lies in the common sense observation of human nature, to wit, that each party defendant is prone to escape liability by foisting blame on the other. Thus, the physician defendant under these circumstances will claim that the injuries arose solely because of the products liability defendant's defective product unencumbered by any malpractice on his part. Similarly, the products liability defendant will proclaim that liability attaches solely because of malpractice by the defendant doctor. By virtue of the products liability defendant's participation at the panel hearing, the panel obtains further "input" in its endeavor to clarify the issues and the settlement aspect which permeates the statutory enactment is rendered more effectual. "The statute was intended to introduce into the process of litigation a stage of pretrial consideration in which representatives of the court, the legal profession and the medical profession would participate in evaluating the claim. 'Apparently, the theory underlying the use of the panels is that the parties *will be better equipped to negotiate a settlement, and under greater pressure to settle, if they are given a preliminary view of the merits of the case * * *'* (Comment, An Analysis of State Legislative Responses to the Medical Malpractice Crisis, 1975 Duke LJ 1417, 1456)." *(Curtis v Brookdale Hosp. Center,* 62 AD2d 749, 754; emphasis supplied.) Of course, where the malpractice claim and the breach of warranty and products liability claims are clearly not inextricably intertwined, as, for example, where circumstances unequivocally demonstrate that the injured party suffered in consequence of concurrent separate acts of malpractice and breach of warranty (and/or products liability), or where it is clear that the products liability and breach of warranty claims are meritless or fairly devoid of merit, then it might more justifiably be urged that no right to participate before the medical malpractice panel devolves upon the products liability defendant pursuant to the statute. Under the latter circumstances, i.e., where the malpractice claim and the products liability claim are not inextricably intertwined, the right of the products liability defendant to participate in the panel hearing rest in the sound discretion of the court, assuming the statute is properly given a restrictive interpretation to exclude said defendant under such circumstances. Another basis for holding that the products liability defendant has the right pursuant to the statute to participate in the panel hearing when the issue of products liability is inextricably intertwined with the issue of medical malpractice, is the fact that by virtue of the 1975 amendment to the statute, the unanimous recommendation of the three-member panel as to liability is admissible in evidence at any subsequent trial (Judiciary Law, § 148-a, subd 8). "In sum, the net effect of the statute herein, and in particular subdivision 8, has been to furnish the jury in a malpractice action with the *opinion of an expert* panel. Two of the three members of the panel can be called by either party, thus giving the jury further guidance and insight into a complex and difficult area. The jury still remains, under the statute, as the ultimate arbiter of the factual questions raised" *(Comiskey v Arlen,* 55 AD2d 304, 315; emphasis supplied). Thus, in a situation where the issue of malpractice and the issue of products liability are inextricably intertwined and as a unanimous recommendation as to liability by the panel before whom the

products liability defendant was not permitted to participate, is admitted into evidence, an unnecessary increased burden is cast upon said defendant at the trial of the malpractice action. The physician and attorney members of the panel may be called as witnesses at trial to testify, for example, that the unanimous finding of no liability as to the codefendant doctor was based on the panel's conclusion that the defectiveness of the product caused the injury. The prejudice to the product liability defendant in such a situation where the issues of malpractice and product liability are inextricably intertwined is obvious. Even assuming the product liability defendant cross-examines the panel member(s), it is forced, unlike any of the other defendants, to attempt to impeach a finding previously reached without its participation, not by that witness alone, but by a three-member quasi-judicial panel. Of course, the jury's attention would be drawn to the fact of this nonparticipation. Nevertheless, in light of the status accorded the expert opinion of the panel's doctor and lawyer, an unwarranted and greater burden is placed on the product liability defendant. "At the trial itself the panelists take on the role of expert witnesses. If that were their only role, surely the opportunity for cross-examination would suffice. However, they have been presented as having acted in a judicial role, and, it is only by virtue of that judicial role, and by their having achieved unanimity therein, that the panelists are allowed to testify at all" *(Virgo v Bonavilla,* 99 Misc 2d 238, 241-242). Thus, the nature of the panel itself mandates the conclusion that the right to cross-examine the panelists at trial may ofttimes be insufficient to overcome prejudice to the product liability defendant resulting from his exclusion from the panel hearing where the issues of malpractice and product liability are inextricably intertwined. It is not disputed on this appeal that the aforesaid issues are inextricably intertwined. Indeed, defendants Dr. Rubin and Montefiore Hospital point out in their brief on appeal that the panel herein rendered a unanimous recommendation of no liability as to them only, with no finding being made respecting the remaining physician defendants. They state that this recommendation proceeded from their opposition to defendant Dr. Robinson's claim that the dehiscence was due to a breakdown of the suture material. They, to the contrary, urged that the sutures manufactured by Ethicon were not defective and that the dehiscence was the result of the pulling away of tissue infected in consequence of the first open heart operation. Where the issues of malpractice and product liability are inextricably intertwined, as here, common sense requires that section 148-a of the Judiciary Law be given its plain meaning, with due regard to accomplishment of the goals it was designed to achieve. As aptly noted in *Curtis v Brookdale Hosp. (supra,* pp 753-754): "When a statute is unambiguous, we may not read into it conditioning language. 'Courts, should not, however, add restrictions or limitations where none exist, nor should they interpret what has no need of interpretation. When words have a definite and precise meaning, courts should not go elsewhere in search of conjecture so as to restrict or extend that meaning *(McCluskey v Cromwell,* 11 NY 593, 601)' *(Matter of Erie County Agric. Soc. v Cluchey,* 40 NY2d 194, 200; see, also, *Matter of Blyn v Bartlett,* 50 AD2d 442, 448, affd 39 NY2d 349)." The facts of this case demonstrate the danger to the purpose underlying section 148-a of the Judiciary Law resulting from the exclusion of the product liability defendant Ethicon, Inc., where the issues of malpractice and product liability are inextricably intertwined. Parenthetically, it is noted that, although the product liability defendant Ethicon urges that the panel has no jurisdiction to make findings as to the liability of product liability defendants while

simultaneously urging its right to participate at the panel hearing, the consequence of findings as to liability by the panel on the malpractice issue will have a necessary concomitant and pragmatic effect upon the product liability issue where such issues are, as here, inextricably intertwined. Having concluded that Ethicon, Inc., had a right to participate at the panel hearing, it necessarily follows that the mere fact that the panel hearing was held may not serve to frustrate Ethicon's right to participate. Assuming the results of that panel hearing to be fair, it still follows that the exclusion of the product liability defendant where the issues of product liability and malpractice are inextricably intertwined, creates an aura of unfairness and may well give rise to overtones of denial of procedural due process. Again, it must be emphasized that defendant Ethicon, Inc., is not seeking to appeal the findings of a medical malpractice panel, but is merely seeking to vindicate its statutory right to participate at the hearing before the panel. As this appeal affects a substantial right of Ethicon on the record herein, its appeal lies as of right (CPLR 5701, subd [a], par 2, cl [v]). Assuming an appeal as of right does not lie, I would, in any event, grant permission to appeal in view of the public policy considerations raised in this matter. Finally, it is noted that it was represented to this court on oral argument of this appeal that the trial of this action has begun and is already of some few weeks duration.* Under these circumstances, the instant appeal is not thereby rendered moot, but the form of relief to which defendant Ethicon is entitled is pragmatically altered. While normally on reversing Trial Term's denial of a party's motion to participate before a medical malpractice panel hearing and our granting of such motion, we would simply remand the matter for a new panel hearing, the fact that the action is already being tried renders such relief ill-advised. Consequently, whether the prejudice to the product liability defendant resulting from its exclusion from participating in the panel hearing has been overcome at the trial of this action may be raised by defendant Ethicon, Inc., on appeal from the judgment after trial, if it is so advised. Accordingly, it is concluded that the order of the Supreme Court, Bronx County, entered September 16, 1979, which denied defendant Ethicon, Inc.'s motion to participate at the medical malpractice panel hearing, should be reversed, on the law; the motion should be granted, with leave to defendant Ethicon, Inc., to raise the issue of prejudice to it arising from nonparticipation on appeal from the judgment after trial of this action. [101 Misc 2d 427.]

---

* It also is represented that the panel's unanimous recommendation as to nonliability of certain of the defendants has been admitted into evidence.