MARK T. CALVIN, Individually and as Administrator of the Estate of BARBARA MOORE, Deceased, Respondent, v NATHANIEL SCHLOSSMAN et al., Respondents, and QUENTIN MEDICAL LABORATORY, Appellant.

First Department, May 8, 1980

## APPEARANCES OF COUNSEL

*Louis J. Rizzo* of counsel *(Rizzo & Rizzo, P. C.,* attorneys), for appellant.

*Carol Weinstein* of counsel *(Gordon, Weinstein & Grossman,* attorneys), for respondent.

## OPINION OF THE COURT

Ross, J.

■ ■ This appeal presents for our resolution the novel question of whether a private, independent medical laboratory can be compelled to participate in a medical malpractice hearing where it is alleged the laboratory's culpable conduct, sounding in malpractice, hastened plaintiff's demise. We find that this question must be answered affirmatively. At the outset we are mindful of this court's determination that rulings with respect to medical malpractice panels are nonappealable (see e.g., *Marrico v Misericordia Hosp.,* 59 AD2d 680). As will be demonstrated *infra,* the case at bar transcends the ambit of these holdings.

Decedent, in December, 1976, consulted her family physician, defendant Dr. Schlossman, complaining of, among other things, vaginal discharge and bleeding. When decedent's condition did not improve, Dr. Schlossman, three months after the initial visit, performed a cervical electrocauterization without first obtaining a Pap smear. Showing no improvement, decedent, in May, 1977, consulted defendant Dr. Roseff, a specialist in obstetrics and gynecology. Dr. Roseff took a Pap smear and forwarded it for analysis to a professional corporation, not a named party herein. This smear was negative. On

her second visit, Dr. Roseff performed a cervical cryocautery, a freezing cauterization procedure. Subsequently, in November, 1977, on a fourth visit to Roseff, a second Pap smear was taken and forwarded to appellant Quentin Medical Laboratory* for analysis. At Quentin, the slide was screened by a laboratory technician, but not examined by a medical doctor or pathologist. This report stated: "Some inflammation. Class II. Repeat in two months".

Decedent's condition deteriorated requiring consultation with a specialist in internal medicine. This last doctor, also not a named defendant, diagnosed her condition in December, 1977, as stage IIa, cervical cancer. She was admitted to Mount Sinai Hospital in March, 1978, and there, over a year later, died of cervical cancer.

The complaint alleges that defendant physicians and appellant laboratory failed to properly diagnose and treat decedent. Appellant argues that the applicable statute, section 148-a of the Judiciary Law, does not contemplate participation in a medical malpractice panel hearing by an independent laboratory. If this reasoning were accepted, it would undermine the purpose and intent of the Legislature which has already accorded the subject statute an expansive definition.

Section 148-a of the Judiciary Law, provides in pertinent part that: "[e]ach Appellate Division * * * shall establish * * * a medical malpractice panel or panels to facilitate the disposition of medical malpractice actions, including malpractice actions where a hospital is a named defendant".

Additionally, subdivision 5 provides that: "[a]ll parties shall be represented at the hearing by counsel authorized to act for their respective clients. If authority is not conferred, the plaintiff and a representative of the carrier so authorized must attend." When section 148-a of the Judiciary Law was first enacted, the then Governor Wilson, in approving the statute, called attention to the problems in the area of medical malpractice and advocated the adoption of malpractice panels on a State-wide basis in order to "speed up disposition of medical malpractice cases" (Governor's Memorandum on approving L 1974, ch 146, NY Legis Ann, 1974, p 379).

This statute has been revised on numerous occasions to reflect its ever increasing scope. A special podiatry panel was

* Appellant is an independent laboratory, unaffiliated with any hospital or medical group.

created by chapter 995 of the Laws of 1974; medical specialists were added to the panel by chapter 109 of the Laws of 1975; panel review of malpractice by a hospital required by chapter 95 of the Laws of 1978. In this latest amendment it was declared that:

"[s]ection 148-a of the Judiciary Law requires each Appellate Division of the Supreme Court to establish within its Judicial Department a medical malpractice panel to facilitate disposition of medical malpractice actions. The bill would amend § 148-a to specifically provide that such panels shall review malpractice actions where a hospital is a named defendant.

"The provisions of § 148-a are generally understood to extend to malpractice actions against hospitals, as well as malpractice actions against doctors. A recent opinion of the Appellate Division, Fourth Department, however, implied that malpractice actions against hospitals might not be subject to the provisions of § 148-a (*Rosenburgh v. University of Rochester*). This bill is intended to avoid any confusion which may have resulted from this opinion.

"This bill would serve to clarify the applicability of § 148-a to all malpractice actions, and would thereby further the objective of that section." (McKinney's Sess Laws, pp 1684-1685.)

■ It is clear that the statute's underlying legislative intent is the prompt disposition of medical malpractice claims. The legislative history of this statute and the judicial interpretations thereof espouse a comprehensive, progressive design and abhor "a technical and formalistic interpretation" (*Kletnieks v Brookhaven Mem. Assn.,* 53 AD2d 169). Bearing this in mind, we are persuaded that the statutory definition of hospital encompasses a private independent laboratory, such as appellant.

" 'Hospital' means a facility or institution engaged principally in providing services by or under the supervision of a physician or, in the case of a dental clinic or dental dispensary, of a dentist, for the prevention, diagnosis of treatment of human disease, pain, injury, deformity or physical condition, including, but not limited to, a general hospital, hospice, public health center, diagnostic center, treatment center, dental clinic, dental dispensary, rehabilitation center other than a facility used solely for vocational rehabilitation, nursing home, tuberculosis hospital, chronic disease hospital, mater-

nity hospital, lying-in-asylum, out-patient department, out-patient lodge, dispensary and a laboratory" (Public Health Law, § 2801).

Additionally, substantial support for this proposition is derived from the statutory definition of a laboratory and the declared purpose for the licensing of such facilities.

"Clinical laboratories * * * provide essential public health services in aiding the medical practitioner by furnishing information invaluable to the diagnosis and treatment of disease. The improper performance of a laboratory procedure may induce an erroneous diagnosis or contribute to the selection of an inappropriate method of treatment, resulting in prolonged or unnecessary hospitalization, injury or even death" (Public Health Law, § 570).

Section 571 of the Public Health Law defines a clinical laboratory as: "a facility for the microbiological * * * cytological or pathological examination of materials from the human body, for the purpose of obtaining information for the diagnosis, prevention or treatment of disease or the assessment of medical condition." The above provisions recognize the basic nature of clinical laboratories, and bespeak of medical doctors and laboratories as allies for the prevention and treatment of disease. Although the services of a medical doctor and a laboratory are divisible, they act as collaborators, not antagonists. Their work is interrelated, and as the above-stated policy cogently recognizes, the analysis performed by a laboratory is supplemental to and bears directly upon the course of medical treatment to be provided. A proper diagnosis can facilitate recovery while an incorrect analysis can spell prolonged affliction.

Moreover, the above statutory provisions are consistent with the statutory definition of the practice of medicine contained in section 6521 of the Education Law, to wit: "diagnosing, treating, operating or prescribing for any human disease". The similarities between these two enactments are evident. The workings of a laboratory and the practice of medicine cannot be separated by an impregnable structure such as plaintiff would have us erect. The controlling criterion is the nature of the act and not the nomenclature given to a particular individual, or corporation (*Musso v Westfield Mem. Hosp.,* 64 AD2d 851). Users of medical services would not benefit by requiring the participation of a medical doctor in an expeditious malpractice hearing and permit the provider of a crit-

ical, interrelated service to avoid participation in the medical malpractice procedure and delay its accountability until the parties reach the trial arena.

We would also point out the absurd result which would follow were we to adopt the position urged by appellant. As noted earlier, by amendment to section 148-a of the Judiciary Law, there have been included within the panel procedure malpractice actions in which a hospital is a named defendant. Accordingly, were we to agree with appellant we would be adopting a construction of the applicable statute which would subject a laboratory attached to a hospital to the medical malpractice panel procedure and at the same time exempt therefrom independent laboratories which perform the very same functions. Such a construction is contrary to a reasonable interpretation of the statutes quoted and common sense.

Any claim that the malpractice panel does not include a specialist in laboratory methods and procedures, or even a representative from an independent laboratory is infirm. "Peer review", as such, is favored, but not required (*Schwartz v Marcove,* 72 AD2d 709). We cannot categorically determine that a medical doctor affiliated with the laboratory of a hospital is unqualified to fairly review the acts or omissions of a person employed in a private laboratory. The employer matters not; experience, training and expertise are the applicable criteria. These qualities are obtainable from innumerable forums and simply because one is not of that particular fold should merit little concern.

Nor is our decision today contrary to this court's recent holding of *Conklin v Montefiore Hosp. and Med. Center* (74 AD2d 792). In *Conklin,* the appellant, a manufacturer of surgical sutures, was prohibited from participating in a medical malpractice panel hearing on the ground that the manufacturer was sued on the theories of negligence, breach of warranty and strict products liability. The present action sufficiently alleges medical malpractice on the part of all named defendants, including appellant, so as to require appellant's participation in this medical malpractice hearing. Further in *Conklin,* the case was actually in the fifth week of trial, when this court heard argument on the appeal. Accordingly, we dismissed without prejudice "to any contention that may be made on appeal from a judgment herein after trial". By precluding the product liability defendant from participating in *Conklin,* the trial court prevented an unnecessary

expansion of the scope of the panel's inquiry and promoted the underlying purpose for which the panel procedure was created namely, to foster informal discussions designed to promote settlement of malpractice issues.

Accordingly, the order of the Supreme Court, New York County (DONTZIN, J.), entered September 10, 1979, denying defendant Quentin Medical Laboratory's motion for an order directing that it not be made a participant in the medical malpractice panel hearing to be held in this action, should be affirmed, with costs.

LUPIANO, J. (concurring). I join the majority with the added observation that the result reached herein is in full accordance with the analysis set forth in my dissent in *Conklin v Montefiore Hosp. and Med. Center* (74 AD2d 792). Because of the procedural nuances raised by the facts in *Conklin v Montefiore Hosp. and Med. Center (supra),* I adhere to the conceptual underpinnings of my view as expressed therein, which view mandates affirmance herein.

MURPHY, P. J., SILVERMAN and CARRO, JJ., concur with ROSS, J.; LUPIANO, J., concurs in an opinion.

Order, Supreme Court, New York County, entered on September 10, 1979, affirmed. Plaintiff-respondent shall recover of appellant $50 costs and disbursements of this appeal.