631 P.2d 315

Janet SALAZARE, as Personal Representative of the Estate of her Fetus, Plaintiff-Appellant,

v.

ST. VINCENT HOSPITAL, Eric C. Wolf, Kenneth Harrold, M.D. and Northern New Mexico Emergency Medical Services, P.C., Defendants-Appellees.

No. 4433.

Court of Appeals of New Mexico.

July 1, 1980.

**410**

Carl J. Butkus, Civerolo, Hansen & Wolf, P. A., Albuquerque, for defendants-appellees St. Vincent Hospital and Eric C. Wolf.

Daniel Shapiro, Ortega & Snead, P. A., Albuquerque, for plaintiff-appellant.

Thomas A. Simons, IV, Sommer, Lawler, Scheuer & Simone, P. A., Santa Fe, for defendants-appellees Kenneth Harrold, M. D., and Northern New Mexico Emergency Medical Services, P. C.

W. Robert Lasater, Jr., Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for amicus curiae.

## OPINION

WALTERS, Judge.

This matter is before us on an interlocutory appeal from the trial court's quashing of plaintiff's notice to take the deposition of a panel member of the Medical Review Commission.

Plaintiff filed a malpractice suit on behalf of herself and her stillborn fetus after presenting the matter to the Commission in accordance with the Medical Malpractice Act, §§ 41–5–1 to 41–5–28, N.M.S.A.1978. The reviewing panel found substantial evidence of malpractice.

It appears from the trial court's order that at the time plaintiff deposed defendant Wolf (an emergency room nurse at St. Vincent's Hospital when the alleged malpractice occurred), Wolf was unable to recall much of the evidence he gave at the hearing before the panel. Plaintiff thereupon sought to depose a member of the panel who recalled Wolf's testimony. In ruling on St. Vincent's and Wolf's motion to quash the notice of deposition, the trial court observed that the witness's testimony probably would provide "an admission [made by Wolf at the panel hearing] which may almost prima facie go to meet [plaintiff's] burden of proof in the case." Nevertheless, the motion to quash was granted. The operative portions of the trial court's order read:

[The court] FINDS AND CONCLUDES as follows:

1. The legislative intent of the Medical Malpractice Act, Sections 41–5–1 et seq. (NMSA 1978) was to create a privilege for members of the Medical Review Commission that would generally exempt them from discovery procedures during the pendency of a lawsuit.

2. This legislatively enacted privilege, referred to in paragraph one (1) above, is constitutionally valid.

3. Plaintiff has properly noticed opposing counsel and properly subpoenaed William Haire, all for the taking of Mr. Haire's deposition. Mr. Haire was a member of the Medical Review Commission that heard Plaintiff's claims against Defendants, and he heard the testimony of ERIC WOLF, one of the defendants.

4. Plaintiff's counsel represented to the Court that Defendant WOLF can no longer recall some of the events to which he testified at the Medical Review Commission Hearing. Plaintiff's counsel also represented that Mr. Haire can recall Mr. WOLF'S testimony with respect to such areas, that, Mr. WOLF'S testimony would be an admission that would tend to establish liability with respect to negligence, and that Mr. Haire is willing to be deposed subject to Subpoena.

5. Good cause does not exist for the taking of Mr. Haire's deposition.

The court further FINDS that this Order involves controlling questions of law as to which there are substantial grounds for difference of opinion and that an immediate appeal from such Order may materially advance the ultimate termination of the litigation.

We are asked principally to determine the correctness of the trial court's interpretation of the Act as it applies to the facts of this case.

We first dispose of another issue raised by appellees. The suggestion that the interlocutory appeal should be dismissed (1) because the order was unappealable and, (2) alternatively, because the issue with which this appeal is concerned—that is, whether the Malpractice Act prevents the taking of

testimony from panel members—arises from an assumption that the parties had appeared before the Medical Review Commission; that since the appealed ruling was invoked only upon motions and argument requesting that the notice of deposition be quashed, there is no *evidence* in the record to verify that the discovery issue was concerned with a proceeding before the statutory Medical Review Commission. To quote from appellees' brief: "Accordingly, as this interlocutory appeal purports to be based upon a privilege or lack thereof contained or not contained in the Medical Malpractice Act, there is no evidentiary basis upon which to base an interlocutory appeal involving the Act."

We note first that the pleadings and the record of the trial court's ruling from the bench, conclusively disclose that both sides acknowledged the underlying proceedings before the Commission as the basis for plaintiff's subpoenaing the witness for deposition and for the defendants' resistance to the proposed discovery. A later order of the trial court recites that it accepted as true plaintiff's representations regarding the case history preceding the notice for Haire's deposition. The *fact* of that acceptance is a sufficient record to determine the propriety of the ruling as it was influenced by the Malpractice Act.

Secondly, if the denial of discovery were *not* occasioned by the trial court's conclusion of a privilege conferred by the Act, then the grounds recited in defendants' motion to quash were false, and defendants were without justification to oppose the taking of the witness's deposition. *See* Rule 26, N.M.R.Civ.P.1978. Defendants cannot have it both ways. Either they relied on certain provisions of the Malpractice Act to obtain the court's ruling, or they offered no sufficient grounds to support their motion to quash.

■ The argument of non-appealability of the order is equally facetious. The order complied with the requirements of § 39–3–4 A, N.M.S.A.1978; this court granted the interlocutory appeal on January 2, 1980. The acceptance of the appeal by this court, when there has been compliance with § 39–3–4 A, is not subject to challenge. Additionally, the discovery question here "is of extraordinary significance [and] there is extreme need for reversal of the district court mandate before the case goes to judgment" if the ruling was erroneous. *American Express Warehousing, Ltd. v. Transamerica Ins. Co.*, 380 F.2d 277, 282 (2d Cir. 1967). The elements of a controlling question of law and a likely advancement of the ultimate termination of litigation exist and are inherent in the question here presented. The trial court so ruled, and so did this court in granting the interlocutory appeal. We adhere to our earlier ruling.

### I.

■ The provisions of the Medical Malpractice Act upon which appellees rely are the following:

41–5–20. Panel deliberations and decision.

A. The deliberations of the panel shall be and remain confidential. . . .

\*　　\*　　\*　　\*　　\*　　\*

D. The report of the medical review panel shall not be admissible as evidence in any action subsequently brought in a court of law. . . .

Section 41–5–21 authorizes the director of the Commission to adopt and publish rules of procedure. In 1971, the New Mexico Medical Society and the Board of Bar Commissioners jointly approved a revision of Rules of Procedure of the Medico-Legal Malpractice Panel, a screening panel voluntarily formed by the two professions which pre-existed the statutory commission.

In their motion to quash, appellees cited and attached to their motion a copy of the rules of the original plan adopted voluntarily in 1963 by the Medical Society, Board of Bar Commissioners and the State Bar, as well as a copy of the revised rules adopted in 1971. They particularly pointed to Paragraph III (3) of the original plan regarding the requirement that the application for consideration by the panel include:

An agreement that the deliberations and discussions of the Panel and of any member of the Panel in its deliberation of the case will be confidential within the Panel and privileged as to any other person, and that no Panel member will be asked to testify in any action where he has previously sat as a Panel member related to such action[,]

and Paragraph 3 of the revised rules:

By appearing before the Panel, the parties consent that no attempt will be made to use as impeaching evidence in Court any statement made by any person during a hearing before the Panel.

The transcript of the trial court's ruling does not suggest that the language of the Commission's procedural rules was a factor in its decisions to quash. Instead, it considered the Act itself as establishing a veil of confidentiality about the screening process which would be defeated if matters other than the panel's report could "be subject . . . to discovery and . . . to evidentiary use." Its findings and conclusions reflect that interpretation. We are not concerned with the finding that good cause did not exist, since good cause is not necessary to discovery under Rule 26 if the Act does not bestow a privilege to panel members.

Plaintiff calls our attention to § 41–5–19 C. It provides:

The hearing will be informal and no official transcript shall be made. Nothing contained in this paragraph shall preclude the taking of the testimony by the parties at their own expense.

This section and those we have already set forth above express, we think, that the Legislature intended the Commission hearings to be conducted in an atmosphere free of the intimidations that may accompany a court setting, and that the give-and-take of the panel's deliberations, after it has heard the presentation of the parties, be as open and uninhibited as are a jury's deliberations at the end of a court trial.

But we do not find any portion of the Malpractice Act which grants a privilege to any participant or witness from testifying regarding anything other than the panel's deliberations or a report prepared by the panel. Nor can Rule 3 of the revised procedural rules of the Commission be read to apply to this case. Plaintiff was not seeking "impeaching evidence"; her effort to depose panelist Haire was for the purpose of retrieving evidence lost as a result of defendant Wolf's lapse of memory. Such evidence is properly discoverable and may be admitted at trial. *See* Rule 804(a)(3), N.M.R.Evid.1978. It falls also within the proscription of Evidence Rule 501 which denies a privilege to anyone, unless provided by the Constitution, the Rules of Evidence or a Supreme Court rule, to refuse to be a witness or to disclose any matter. Indeed, if any portion of the Medical Malpractice Act or its internal operating rules could be construed to grant such a privilege, it would be an invalid provision. Such a notion of statutorily-created privilege was emphatically dispelled by the pronouncement of our Supreme Court in *Ammerman v. Hubbard Broadcasting, Inc.*, 89 N.M. 307, 312, 551 P.2d 1354 (1976), when it said,

. . . [U]nder our Constitution the Legislature lacks power to prescribe by statute rules of evidence and procedure[;] this constitutional power is vested exclusively in this court, and statutes purporting to regulate practice and procedure in the courts cannot be binding, [thus] we are able to reach no conclusion other than that the privilege purportedly created . . . is constitutionally invalid and cannot be relied upon or enforced in judicial proceedings.

■ Defendants urge, however, that Evidence Rule 502, which deals with the privilege of any person or entity to refuse to disclose, and to otherwise prevent the disclosure of, a report required by law, is applicable. Section 41–5–20 D requires the medical review panel to send a copy of its report to the health care provider's professional licensing board. Thus, say appellees, this rule brings them within the privilege created by Rule 502. This is not so, of course; plaintiff does not want to reach the report. She seeks testimony of a witness who presumably is able to supply funda-

mental evidence that is not otherwise obtainable because of an "unavailable declarant." Rule 804(b)(3), N.M.R.Evid.1978. The privilege recognized in Rule 502 is not germane. Furthermore, by its terms it refers to written documents; it does not apply to proof of primary testimony which may have contributed to the content of a privileged report or return. See *Blackledge v. Martin K. Eby Constr. Co., Inc.*, 542 F.2d 474 (8th Cir. 1976); *Krizak v. W. C. Brooks & Sons, Inc.*, 320 F.2d 37 (4th Cir. 1963).

■ To prevent future misunderstandings which may arise from interpretation of the Commission's internal Rules of Procedure, if any are promulgated or the old rules are in use, we hold also that no privilege expressly or impliedly granted by any of its provisions could withstand constitutional attack under the *Ammerman* rationale.

We therefore hold that, on the record before us, it was error for the trial court to quash plaintiff's subpoena to depose witness Haire upon grounds that the Medical Malpractice Act creates a privilege for panel members. We hold, further, that in the absence of good cause shown upon motion for protective order (*see* N.M.R.Civ.P. 30(B), N.M.S.A.1978), plaintiff may depose "any person" regarding "any matter, not privileged, which is relative to the subject matter ... [of] the pending action." N.M.R. Civ.P. 26(a) and (b). The testimony here sought, not being privileged, may be taken under rule 26.

## II

■ New Mexico Physicians Mutual Liability Company was granted leave by this court to file an Amicus Curiae brief. They argue that the Malpractice Act is not applicable to this appeal because none of the defendants is a "health care provider" as defined in § 41–5–3 A, none of them having qualified under the requirements of § 41–5–5, N.M.S.A.1978. Defendants did not respond to the brief of amicus.

Defendant hospital moved for dismissal of this appeal shortly after plaintiff filed the transcript on the same ground raised now by amicus. The motion was denied because the issue had not been ruled on by the trial court.

We now consider the effect of the affidavit attached to amicus's motion, in which the State Superintendent of Insurance stated, in effect, that none of the defendants had established proof of financial responsibility required by the statute, nor had they paid the surcharge assessed, (*see* § 41–5–25, N.M.S.A.1978), in order to qualify for the benefits of the Act. The principal benefits which amicus must refer to are the payment of judgments against health care providers from the patient's compensation fund under § 41–5–25 and the limitation of recovery established in § 41–5–6. This alleged defect in qualification of defendants is discussed because the case must be remanded and we deem it sensible to offer such assistance to the trial court as we are able.

We agree that if defendants are not health care providers because they have failed to qualify, they fall under the sanctions imposed by § 41–5–5 B and they are not entitled either to the limitation of any recovery against them, or to payment of any such recovery from the compensation fund. All parties having voluntarily submitted to the statutory malpractice screening procedure, however, defendants' lack of status may not deprive plaintiff of the benefit of the expert witness provision (§ 41–5–23), or to the tolling of any statute of limitations during the described period of the screening process (§ 41–5–22). At the time these benefits accrued to plaintiff, the issue of defendants' non-amenability to the provisions of the Act was not raised. That question may not be raised by defendants or amicus now for any purpose other than to estop *defendants* from claiming whatever benefits they might otherwise have received under the Act.

Defendants obtained a ruling from the trial court in reliance upon provisions of the Malpractice Act and certain of the rules under which the medical-legal panel operated. Judicial estoppel will now act to pre-

serve plaintiff's rights granted by the statute or the rules despite defendants' and amicus's untimely denial of the Act's applicability to them. *Cf. Citizens Bank v. C. & H. Constr. & Paving Co., Inc.*, 89 N.M. 360, 552 P.2d 796, *cert. den.* 90 N.M. 7, 558 P.2d 619 (1976) (where party assumes certain position and succeeds in maintaining that position, an opponent acquiescing in position may not be prejudiced by party's assumption of contrary position); *Home Savings Bank v. Woodruff*, 14 N.M. 502, 94 P. 957 (1908) (parties who by their pleadings in express terms have taken a certain position in the cause, cannot be permitted to "mend their hold" after judgment rendered).

The principle is the same here, and if defendants lose the protections which were available to them because of the matters raised by the brief of amicus curiae and in defendant St. Vincent's earlier motion, thus exposing themselves to greater damages than would be allowed under the Act, plaintiff nevertheless may proceed in a common-law malpractice action against defendants outside the Act, but with the assistance of an expert witness to be provided through the Medical Review Commission.

Our resolution of this issue in no way dilutes our holding regarding the taking of Haire's deposition. The order of the trial court quashing plaintiff's subpoena and notice is reversed. The case is remanded for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

LOPEZ, J., concurs.

ANDREWS, J., dissents.

ANDREWS, Judge (dissenting).

I disagree with the majority in this case. This interlocutory appeal presents only one question of law—whether the Medical Malpractice Act [§ 41–5–1 to 41–5–28, N.M.S.A. 1978] establishes a "privilege for members of the Medical Review Commission that would generally exempt them from discovery procedures during the pendency of a lawsuit."

In my opinion, the Act, when read as a whole [§ 41–5–1 to 41–5–28, N.M.S.A.1978] supports this conclusion. The Act specifically delineates the duties of the panel selected by the Medical Review Commission when called upon to review malpractice claims.[1] The panel shall decide only two questions:

1. Whether there is substantial evidence that the acts complained of occurred and that they constitute malpractice; and

2. Whether there is a reasonable medical probability that the patient was injured thereby. Section 41–5–20.

Section 41–5–20(C) further defines the manner in which a panel shall decide each case and specifies the form of the decision. This legislatively established procedure, as well as the fact that even the report of the panel is not admissible as evidence in any subsequent legal action demonstrates legislative intent that the hearings be and remain confidential.

One provision of the Act, alone, creates confusion in what is otherwise a clear and unambiguous law wherein the Medical Review Commission and its members are provided with immunities and privileges.[2] Section 41–5–19(C) states that the hearing "will be informal and no official transcript shall be made." However, the section further allows the parties to take "testimony . . . at their own expense." Obviously, as appellant argues, it can be implied from this clause, that no confidentiality exists for such testimony, nor is a privilege created for such testimony, where the law expressly allows for preservation of the testimony. Whether or not such an argument has merit is not before us in this case. The plaintiff-

---

1. The majority is correct in holding that whether or not the defendants here are "health care providers" as defined in § 41–5–3 is irrelevant. All parties subjected themselves to the jurisdiction of the Commission and the issue of jurisdiction was not presented to either the panel or the trial court so it is not a matter for this court to consider.

2. *See* § 41–5–20(E).

 

appellant failed to take testimony during the hearing. Her failure to avail herself of this provision in the law, however, is not material to the real issue in this case. The question is not one of suppression of admissions but one of privilege for a panel member. The fact that plaintiff had the statutory right to record the proceedings gave her an opportunity to preserve admissions, if any, which might have been made. Certainly it is inconsistent to permit the hearing procedures to be transcribed while at the same time granting a privilege to panel members, *see Herrera v. Doctor's Hospital*, 360 So.2d 1092 (Fla.App.1978), but the Medical Malpractice Act is explicit in protecting the confidentiality of the Medical Review Commission.[3] The overwhelming tenor of the New Mexico Act is in favor of such a privilege for members of the statutorily established panel.

Where the "panel has determined that the acts complained of were or reasonably might constitute malpractice and that the patient was or may have been injured by the act, the panel, its members, the director and the professional association concerned will cooperate fully with the patient in retaining a physician . . . who will . . . testify on behalf of the patient." Section 41–5–23. Through this means, the panel assists the patient in a malpractice action brought to trial. There is no need to go further and require a panel member to testify as to matters he heard at the Medical Review Commission hearing.

The policy reasons which support this view are clear. The confidential nature of the proceedings and the protection afforded the panel protects both this process,[4] as well as the fairness of any subsequent action. *Cf. Simon v. St. Elizabeth Medical Center*, 355 N.E.2d 903 (Ohio Com.Pl.1976). (Where the court noted the excessive weight such testimony would have, and the probable interference with a fair trial.)

The Medical Malpractice Act was carefully drafted. To disregard the clear legislative intent is to do great injustice to the purpose of the Act. The trial court should be affirmed.

---

3. Clearly this would not be true if the statute specifically *did* make mention of the privilege. *See Curtis v. Brookdale Hospital Center*, 62 A.D.2d 749, 406 N.Y.S.2d 494 (1978).

4. The statute contains requirements that there be no official transcript, that the deliberations be confidential, that the report is not admissible in any subsequent action, and that the brief summary of the evidence presented cannot be made public or the subject of subpoena.