755 P.2d 40

**SOUTHWEST COMMUNITY HEALTH SERVICES, Petitioner,**

v.

**Honorable W.C. "Woody" SMITH, District Judge, Second Judicial District, and Honorable Ross Sanchez, District Judge, Second Judicial District, Div. VIII, Respondents.**

**No. 16543.**

Supreme Court of New Mexico.

May 10, 1988.

Rehearing Denied June 7, 1988.

Rodey, Dickason, Sloan, Akin & Robb, P.A., W. Robert Lasater, Jr., Michael J. Condon, Albuquerque, for petitioner.

Miller, Stratvert, Torgerson & Schlenker, P.A., Alan C. Torgerson, Alice Tomlinson Lorenz, Steven J. Vogel, Steven Schonberg, Bruce P. Moore, Albuquerque, for real parties in interest.

William H. Carpenter, Albuquerque, for amicus curiae NM Trial Lawyers Ass'n.

## OPINION

RANSOM, Justice.

The real parties in interest, Steve and Tammy Greeson, brought separate medical malpractice actions against petitioner Southwest Community Health Services (Southwest) and Dr. Robert Gathings. The cases were consolidated for trial. In motions to compel answers to interrogatories and to compel production of documents, the Greesons sought the credentialing file which Southwest maintained on Dr. Gathings. In response to the motions, Southwest argued that the information requested was confidential under NMSA 1978, Section 41–9–5 (Repl.Pamp.1986).

The court conducted an *in camera* inspection of all documents allegedly immune from discovery under Section 41–9–5, which provides:

All data and information acquired by a review organization in the exercise of its duties and functions shall be held in confidence and shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization or in a judicial appeal from the action of a review organization. No person described in Section 4[41–9–4 NMSA 1978] of the Review Organization Immunity Act shall disclose what transpired at a meeting of a review organization except to the extent necessary to carry out one or more of the purposes of a review organization or in a judicial appeal from the action of a review organization. Information, documents or records otherwise available from original sources shall not be immune from discovery or use in any civil action merely because they were presented during proceedings of a review organization, nor shall any person who testified before a review organization or who is a member of a review organization be prevented from testifying as to matters within his knowledge, but a witness cannot be asked about opinions formed by him as a result of the review organization's hearings.

Following *in camera* inspection, the court ordered production of the requested documents either because the statute was not applicable to the credentialing file or because the rules of discovery or evidence overrode the statute.

Southwest petitioned this Court for an alternative writ of prohibition or superintending control. Following a hearing, this Court issued a preliminary writ and instructed the parties to address the constitutionality of Section 41–9–5.

Consolidated with this case for consideration was *Raney v. Onuska*, S.Ct. No. 16,-540, in which the trial court, following *in camera* inspection, had denied discovery of hospital records constituting minutes of meetings pertaining to the surgery which was the subject of the suit and relevant letters, correspondence, and other documents evincing staff privilege reductions pertaining to the defendant doctor. In *Raney*, the court had found that the statute applied to the documents and had ordered that they not be disclosed. Pending resolution of these cases, the *Raney* case was settled and the writ issued in that case has been quashed. Now, in *Southwest*, we first could address whether the court was correct in finding that the statute is not applicable to the credentials file. However, the record in that regard is not satis-

factory for review and we believe it is important for us to resolve the constitutional issue.

In *Ammerman v. Hubbard Broadcasting, Inc.*, 89 N.M. 307, 551 P.2d 1354 (1976), *appeal on other grounds after remand*, 91 N.M. 250, 572 P.2d 1258 (Ct. App.), *cert. denied*, 91 N.M. 249, 572 P.2d 1257 (1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978), this Court held legislation creating a testimonial privilege in a judicial proceeding unconstitutional. The statute constituted an evidentiary rule, traditionally considered to be "adjective law" or "procedural law," the promulgation of which is a power vested in this Court by virtue of its superintending control over all inferior courts under Article VI, Section 3, of the New Mexico Constitution. Article III, Section 1 of the Constitution further provides that:

> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this constitution otherwise expressly directed or permitted.

■ Pleading, practice and procedure are of the essence of judicial power. Functions of the judiciary which are essential to its constitutional powers cannot be exercised by another branch of the government in conflict with the judicial branch. While, historically, the judiciary has shared procedural rule-making with the legislature, any conflict between court rules and statutes that relate to procedure are today resolved by this Court in favor of the rules. *Maestas v. Allen*, 97 N.M. 230, 231, 638 P.2d 1075, 1076 (1982); *Salazare v. St. Vincent Hosp.*, 96 N.M. 409, 412, 631 P.2d 315, 318 (Ct.App.), *aff'd in part, rev'd in part*, 95 N.M. 147, 619 P.2d 823 (1980). Therefore, at issue in this case is the effect of any conflict in Section 41-9-5 with existing evidentiary rules.

■ Unlike the statute in *Ammerman*, Section 41-9-5 cannot be said to be "nothing more or less than [an] attempt to create a rule of evidence, comparable to the other privileges * * *." *Ammerman*, 89 N.M. at 309, 551 P.2d at 1356. Section 41-9-5 is an exercise of the legislature's constitutional authority to enact laws to preserve public health and safety. *See State v. Collins*, 61 N.M. 184, 297 P.2d 325 (1956). It is part of the Review Organization Immunity Act (ROIA), NMSA 1978, Sections 41-9-1 through -7 (Repl.Pamp.1986). The ROIA establishes a medical peer review process to promote the improvement of health care in New Mexico. Further, it recognizes that candor and objectivity in the critical evaluation of medical professionals by medical professionals is necessary for the efficacy of the review process.

Although promotion of the public welfare is its primary objective and confidentiality of peer review has application far beyond the limited arena of civil litigation, Section 41-9-5 does encroach upon this Court's prerogative "to regulate all pleading, practice and procedure affecting the judicial branch of government." *State ex rel. Anaya v. McBride*, 88 N.M. 244, 246, 539 P.2d 1006, 1008 (1975). There can be no question that the confidentiality provision of ROIA impedes the "judicial machinery administered by the courts for determining the facts upon which the substantive rights of the litigant rest and are resolved." *Ammerman*, 89 N.M. at 310, 551 P.2d at 1357. The measure withholds from discovery otherwise relevant and admissible evidence. *Cf.* SCRA 1986, 17-304 (no express immunity from discovery under confidentiality of disciplinary proceedings in the practice of law).

We do not believe, however, that the statute creates an evidentiary privilege, although statutes similar to Section 41-9-5 have been labelled as such. *See, e.g., Humana Hosp. Desert Valley v. Superior Court of Ariz. in and for Maricopa County*, 154 Ariz. 396, 742 P.2d 1382 (Ct.App. 1987); *Posey v. District Court In And For the Second Judicial District*, 196 Colo. 396, 586 P.2d 36 (1978); *Straube v. Larson*, 287 Or. 357, 600 P.2d 371 (1979). Our

analysis of the statute reveals that, in the sense that records from the peer review process are excluded from evidence, the confidentiality provision establishes an immunity from discovery. *See Matchett v. Superior Court for County of Yuba,* 40 Cal.App.3d 623, 629, n. 3, 115 Cal.Rptr. 317, 320 n. 3 (1974); *Shelton v. Morehead Memorial Hosp.,* 318 N.C. 76, 347 S.E.2d 824 (1986); *Coburn v. Seda,* 101 Wash.2d 270, 677 P.2d 173 (1984).

A privilege inures to the benefit of a specific interpersonal relationship such as attorney-client (SCRA 1986, 11–503), psychotherapist-patient (SCRA 1986, 11–504), husband-wife (SCRA 1986, 11–505), and priest-penitent (SCRA 1986, 11–506). Moreover, an evidentiary privilege creates in the person holding the privilege a right to disclose or not to disclose otherwise admissible testimony. In contrast, Section 41–9–5 precludes any party from using for purposes of civil litigation the confidential records of peer review proceedings. Unlike a privilege, the statute provides no waiver through voluntary disclosure. *See* SCRA 1986, 11–511. On the contrary, criminal penalties attach for violation of Section 41–9–5. *See* § 41–9–6. Furthermore, we again stress, the confidentiality created by this statute is intended to prevent disclosure in situations extending far beyond the production of evidence in civil litigation.

Because Section 41–9–5 does not purport to create an evidentiary privilege in civil litigation, the statute does not come into direct conflict with SCRA 1986, 11–501 which provides that:

Except as otherwise required by constitution and except as provided in these rules or in other rules adopted by the supreme court, no person has a privilege to:

A. refuse to be a witness; or

B. refuse to disclose any matter; or

C. refuse to produce any object or writing; or

D. prevent another from being a witness or disclosing any matter or producing any object or writing.

Under *Ammerman* and its progeny, if the statute had created an evidentiary privilege it would be invalid.

When there comes before this Court a conflict between the functions of two branches of government, the Court must resolve that conflict in a manner reasonably assuring that powers exercised by one branch do not conflict with the essence of power exercised by the other branch of government. *See United States v. Nixon,* 418 U.S. 683, 707, 94 S.Ct. 3090, 3107, 41 L.Ed.2d 1039 (1974). We are mindful that the essential functions of both the legislative and judicial branches must remain inviolate. It is certain that this Court should not invalidate substantive policy choices made by the legislature under the constitutional exercise of its police powers; and, as discussed above, our decisions leave no doubt that it is the function of this Court to promulgate procedural rules and that the legislature has no authority to enact evidentiary rules which conflict with the rules of this Court.

In *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the United States Supreme Court grappled with an analogous problem. At issue was the President's invocation of executive privilege to shield certain high-level communications from judicial process in a criminal trial. The Supreme Court recognized that the privilege was "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." 418 U.S. at 708, 94 S.Ct. at 3107.

But this presumptive privilege must be considered in light of our historic commitment to the rule of law. * * * The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. * * * [E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth.

418 U.S. at 708–10, 94 S.Ct. at 3107–3109.

In balancing the President's assertion of a constitutional privilege of confidentiality against the constitutional need for relevant evidence in a criminal trial, the Supreme

Court held that, without more, the former would have to yield to the latter. Subsequently, in the case in which former President Nixon challenged the constitutionality of the Presidential Recordings and Materials Preservation Act on the grounds, *inter alia,* that it violated executive privilege, the Supreme Court discussed its 1974 *Nixon* decision. It noted that a balance was struck there against the claim of constitutional privilege because the Supreme Court determined that intrusion into the confidentiality of Presidential communications was outweighed by the impediment that an absolute, unqualified privilege would place in the way of the primary constitutional duty of the judicial branch. *Nixon v. Administrator of General Services,* 433 U.S. 425, 447, 97 S.Ct. 2777, 2792, 53 L.Ed.2d 867 (1977) (noting the protection that a district court would be obliged to provide such communications in *in camera* inspection).

While the legislative decision to prohibit notoriety of medical peer review proceedings is a constitutional exercise of the essential legislative function to promote the health and welfare of New Mexico's citizens, the Court cannot ignore an overbroad implementation of the confidentiality provision which would impinge upon the right of litigants to have their disputes decided on relevant and material evidence. It is not a matter of the statute being unconstitutional but rather a recognition, *when litigation is at issue,* that conflicting constitutional powers by two separate and independent branches of government are being exercised. Which branch must yield to the other depends upon the circumstances of each individual case.

An exercise of judicial discretion is called upon in the balancing of those interests. It is well settled that it is the unique responsibility of the courts, not the executive or legislature, to resolve a conflict between two competing constitutional interests. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) ("It is emphatically the province and the duty of the judicial department to say what the law is."); *Baker v. Carr,* 369 U.S. 186, 211, 82 S.Ct. 691, 706, 7 L.Ed.2d 663 (1962) ("Deciding whether a matter has in any measure been committed by the Constitution to another branch of government, or whether the action of that branch exceeds whatever authority has been committed * * * is a responsibility of this Court as ultimate interpreter of the Constitution."); *United States v. Nixon,* 418 U.S. at 703–05, 94 S.Ct. at 3105–3106. The responsibility of the courts to balance conflicting constitutional interests was recognized by this Court in *State ex rel. Attorney General v. First Judicial District of New Mexico,* 96 N.M. 254, 629 P.2d 330 (1981), in which it was held that when an executive privilege of constitutional origin comes into confrontation with the constitutional duty of the judiciary to do justice in matters brought before it, a balancing of the protected interests must be undertaken by the courts. *Id.* at 258, 629 P.2d at 334.

■ Consequently, we hold that all data and information acquired by a review organization in the exercise of its duties and functions, and opinions formed as a result of the review organization's hearings, shall be governed by Section 41–9–5. When a party invokes Section 41–9–5 to immunize evidence from discovery, the burden rests upon that party to prove that the data or information was generated exclusively for peer review and for no other purpose, and that opinions were formed exclusively as a result of peer review deliberations. If the evidence was neither generated nor formed exclusively for or as a result of peer review, it shall not be immune from discovery unless it is shown to be otherwise available by the exercise of reasonable diligence. Of course, under SCRA 1986, 1–026(B)(1) and 1–037(A), the party seeking to compel discovery would have had the initial burden of proving relevance to the subject matter. The procedure will entail the trial court's *in camera* examination of the information and, perhaps, an evidentiary hearing to determine whether it properly falls within the parameters of Section 41–9–5 as announced by the Court today.

■ We further hold that, if the information is ruled to be confidential, the party seeking access must then satisfy the trial

court that the information constitutes evidence which is critical to the cause of action or defense. If the trial court determines that the success or failure of a litigant's cause of action or defense would likely turn on the evidence adjudged to fall within the scope of Section 41–9–5, then the trial court shall compel production of such evidence. It is the trial judge who will be entrusted with balancing the need to ensure the confidentiality of peer review against the need of litigants to discover evidence essential to the merits of their case. *Cf. Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556 (7th Cir.1984).

■ Some courts have seen the resolution of the conflict inherent in peer review confidentiality as being a political or public policy question to be resolved by the legislature. *See, e.g., Humana Hosp. Desert Valley v. Superior Court of Ariz. in and for the County of Maricopa,* 154 Ariz. 396, 742 P.2d 1382 (Ct.App.1987); *Holly v. Auld,* 450 So.2d 217 (Fla.1984); *Shelton v. Morehead Memorial Hosp.,* 318 N.C. 76, 347 S.E.2d 824 (1986). For this Court to take that tack, however, would require us to deny the clear holding of *Ammerman* that the promulgation of objective or procedural law ultimately is the constitutional prerogative of the judiciary. We hold that the legislature has no power to decide that it is in the public's interest to diminish that power under any circumstances.

■ Finally, we find that the application of this statute as construed today by this Court to the case at bar does no violence to *Marquez v. Wiley,* 78 N.M. 544, 434 P.2d 69 (1967), which held that rules adopted by this Court are not effective to change the procedure in any pending case. *Id.* at 546, 434 P.2d at 71. This is not a case where the rules of the game were changed without notification to the parties. Section 41–9–5 was in effect prior to the initiation of this litigation. Our opinion today merely construes a pre-existing statute; it does not adopt a change in procedural rules as in *Marquez.*

We quash the alternative writ previously issued and remand with instructions that the court determines whether Section 41–9–5 is applicable to the credentialing file and, if it is, to proceed in a manner consistent with this opinion.

IT IS SO ORDERED.

SOSA, Senior Justice, and WALTERS, J., concur.

SCARBOROUGH, C.J., and STOWERS, J., dissent.

SCARBOROUGH, Chief Justice, dissenting.

I respectfully dissent. I would make the alternative writ permanent, uphold the constitutionality of NMSA 1978, Section 41–9–5, (Repl.Pamp.1986), and overrule *Ammerman v. Hubbard Broadcasting, Inc.,* 89 N.M. 307, 551 P.2d 1354 (1976), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978) to the extent it held that statutory privileges created by the legislature are unconstitutional.

I agree with the majority that historically the judiciary has shared procedural rule-making authority under the constitution with the legislature, therefore, I would uphold the confidentiality provisions of Section 41–9–5 as written and in their entirety.

Section 41–9–5 provides that all data and information acquired by a peer review organization is confidential except for circumstances that are unrelated to the issue involved here. The majority recognizes that similar statutes have been interpreted as creating privileges. *See Humana Hosp. Desert Valley v. Superior Court of Maricopa County,* 154 Ariz. 396, 742 P.2d 1382 (Ct.App.1987). The majority also recognizes that Section 41–9–5 withholds from discovery otherwise relevant and admissible evidence. *Ammerman* requires that we invalidate Section 41–9–5. Under *Ammerman,* statutory privileges are unconstitutional to the extent they impact judiciary proceedings. In *Ammerman,* the Supreme Court struck down as unconstitutional a statute by which the legislature provided that certain communications of journalists were privileged and not subject to disclosure in judicial proceedings. The statute here is strikingly similar to the statute

involved in *Ammerman. Ammerman* has been criticized by scholars. *See* 2 Weinstein & Berger, *Weinstein's Evidence* ¶ 501[07] (1985); Browde & Occhialino, *Separation of Powers and the Judicial Rule–Making Power in New Mexico: The Need for Prudential Restraints*, 15 N.M. L.Rev. 407 (1985); Note *Evidence–Newsman's Privilege—Legislatively Enacted Newsman's Privilege Invalid as Infringement on Judicial Rule–Making Power*, 1977 B.Y.U.L.Rev. 493. I would overrule *Ammerman* to the extent it held that statutory privileges are unconstitutional.

In *St. Vincent Hospital v. Salazar*, 95 N.M. 147, 619 P.2d 823 (1980), we upheld a privilege similar to that of Section 41–9–5 which was conferred by the Medical Malpractice Act, NMSA 1978, Section 41–5–20 (Repl.Pamp.1986). There, we upheld the statutory privilege to the extent it protected medical review panel "deliberations and any report made by the panel." *St. Vincent*, 95 N.M. at 148, 619 P.2d at 824. Although the privilege which we upheld in *St. Vincent* pertained to deliberations and reports of medical review panels (as contrasted with the deliberations and reports of peer review organizations), the history of the medical review process is instructive. Since 1976, 732 cases have been resolved following a medical review panel hearing. Of these cases, only 143 resulted in litigation. It is clear that activity of the Legislature in the area of medical malpractice has resulted in the early conclusion of hundreds of malpractice lawsuits. Similarly, peer review is intended to reduce the number of cases of medical malpractice by identifying and eliminating incompetent physicians. Consequently, I believe that we should uphold Section 41–9–5 to the same extent we upheld Section 41–5–20.

The privilege created by Section 41–9–5 reflects a public policy decision appropriately made by the Legislature in favor of confidentiality of review organization proceedings for the preservation of the public health and safety. There is no question that the Legislature has constitutional authority to enact laws in the exercise of its police power for the preservation of the public health and safety, including laws that provide evidentiary privileges.

The majority discusses the burden of proof required when a privilege is asserted under Section 41–9–5. They hold that the burden rests upon the party asserting the privilege to prove the requested evidence should be considered confidential. This discussion is inappropriate because the issue was not briefed by the litigants. Contrast the position of the majority with the reasoning set forth in *State Ex. Rel. Atty. Gen. v. First Judicial District of New Mexico*, 96 N.M. 254, 258, 629 P.2d 330, 334 (1981), reh'g denied.

The majority also discusses circumstances where full disclosure of all data and information acquired by a peer review organization is contemplated. Such a result would render meaningless the entire statutory scheme set forth in Section 41–9–5. I am unable to support such a proposition. I doubt that we would reach similar results in two other situations that come to mind. By way of comparison, consider the constitutional privilege against disclosure afforded judges whose conduct is subject to examination by the Judicial Standards Commission. N.M. Const. art. VI § 32. Also, we have clearly, by rule, afforded attorneys confidentiality when inquiry is made into their conduct by disciplinary counsel acting for the Supreme Court. SCRA 1986, 17–304. Are we creating a separate standard for physicians and hospitals? Since this Court has seen fit to reject the privileges granted under Section 41–9–5, we should at least provide physicians with the confidentiality of Section 41–9–5 peer review proceedings by Supreme Court rule to the same extent such privileges are extended to attorneys by SCRA 1986, 17–304.

For these reasons I dissent.

STOWERS, Justice, dissenting.

This case is before this court on whether to grant a permanent writ of prohibition. At the preliminary arguments, we requested that the parties brief the constitutionality of Section 41–9–5 of the Review Organization Immunity Act (ROIA), NMSA 1978, Sections 41–9–1 through –7 (Repl.

Pamp.1986). Nothing was presented to rebut the presumptive validity and constitutionality of that section; therefore, I am persuaded that it is constitutional and agree with the majority's conclusion to that effect. *See Aetna Finance Co. v. Gutierrez,* 96 N.M. 538, 632 P.2d 1176 (1981); *City of Albuquerque v. Jones,* 87 N.M. 486, 535 P.2d 1337 (1975).

I do not agree, however, with the majority's narrow construction of the peer review privilege in Section 41–9–5 limiting that privilege to data and information "generated exclusively" for peer review, and as a result of peer review deliberations. Such a construction, I believe, is contrary to the language and purposes of ROIA.

ROIA represents an attempt to improve the quality of health care services rendered by health care providers in New Mexico. To achieve this purpose, peer review is vital. The statute endeavors to make the peer review process work; hence, the reason for the provision of confidentiality. Meaningful peer review cannot be possible without this guarantee of confidentiality for the information acquired and opinions elicited from the medical community regarding the competence of other health care providers. Without a statutory peer review privilege or with substantial restrictions imposed on the privilege, persons involved in health care would be undoubtedly reluctant to engage in frank and candid evaluations of their colleagues. The result could be a concomitant deterioration in the quality of health care available in this state.

A discovery privilege will impinge inevitably upon the rights of some civil litigants to discovery of information which might be helpful to their causes of action. This, however, is not unusual in the field of law. Thus, although we recognize that discovery procedures are to be liberally construed, they are not without certain limitations. For example, the following relationships: attorney-client, SCRA 1986, 11–503, psychotherapist-patient, SCRA 1986, 11–504, husband-wife, SCRA 1986, 11–505, priest-penitent, SCRA 1986, 11–505, each establish a privilege immune from discovery. The legislature, in Section 41–9–5, has properly balanced the competing interests: the right of a litigant's access to information with the need for confidentiality in peer review proceedings.

The language in Section 41–9–5 effectuates the purposes of ROIA. The provisions therein set out what materials are discoverable and when the peer review privilege prohibits discovery. The statute allows discovery of all data and information acquired by a peer review organization when necessary to carry out any of the purposes of the review organization stated in Section 41–9–2(E)(1) through (8), or when there is a judicial appeal from the action of the review committee. It also allows for disclosure of what transpired at a meeting of the review organization by a member of the review organization for these same two reasons. In addition, the statute provides for discovery of data and information if otherwise available from original sources. That means that information, in whatever form available, from original sources other than the medical review organization is not immune from discovery or use at trial merely because it was presented during a medical review proceeding; neither is one who is a member of the review organization prevented from testifying regarding information he learned from sources other than the review organization itself, even though that information might have been shared by the committee. The statute only prohibits discovery of "data and information *acquired* by a review organization in the exercise of its duties." (emphasis added). It is therefore unnecessary to further confine the peer review privilege to "exclusively generated" data and information by the review organization as the majority opinion does.

Moreover, the majority's inclusion of a second level of review effectively destroys any concept of confidentiality in the statute. The majority holds that even after the trial court has initially concluded that certain evidence is confidential, the court can still compel production of this privileged evidence if the success or failure of a litigant's cause of action would likely turn on that evidence. This gives a party a second

bite of the apple and, in essence, permits *all* information to be discoverable. Furthermore, a second level of review is so contrary to the language and purposes of the statute that in effect it is judicial legislation; and this, we have said repeatedly we will not do. *See Thomas v. Henson,* 102 N.M. 326, 695 P.2d 476 (1985); *Bolles v. Smith,* 92 N.M. 524, 591 P.2d 278 (1979); *Varos v. United Oil Co. of California,* 101 N.M. 713, 688 P.2d 31 (Ct.App.1984).

For the above stated reasons, I find that Section 41–9–5 is constitutional and would grant a permanent writ of prohibition.