2006-NMSC-028

137 P.3d 611

The ESTATE OF Rudy ROMERO, by Evelyn ROMERO, personal representative, and Evelyn Romero, individually and as guardian and next friend of Robbie R., a minor, Plaintiffs–Respondents,

v.

CITY OF SANTA FE, The City of Santa Fe Police Department, and Jerry Archuleta, Defendants–Petitioners.

No. 28,816.

Supreme Court of New Mexico.

June 8, 2006.

French & Associates, P.C., Stephen G. French, Valerie A. Chang, Albuquerque, NM, Davis, Gay & Jahner, P.C., Michael S. Jahner, Albuquerque, NM, for Petitioners.

Catron, Catron & Pottow, P.A., Richard S. Glassman, Santa Fe, NM, for Respondents.

Montgomery & Andrews, P.A., Sarah M. Singleton, Carolyn A. Wolf, Santa Fe, NM, for Amicus Curiae, New Mexico Association of Counties.

Randall D. Van Vleck, Santa Fe, NM, for Amicus Curiae, New Mexico Municipal League.

**OPINION**

CHÁVEZ, Justice.

{1} The question in this case is whether documents and other information in an on-going criminal investigation are discoverable in related civil litigation. This litigation arises out of the disappearance of Robbie Romero, who was seven years old when he was last seen near his home in Santa Fe on June 7, 2000. Plaintiffs are the parents of Robbie Romero,[1] who sued the City of Santa Fe, the Santa Fe Police Department (City Defendants), and Jerry Archuleta, a former Santa Fe police lieutenant, for alleged negligence in the handling of the investigation into Robbie's disappearance. This tragic backdrop makes the conflicting interests in this case, between the parents' natural desire to know the fate of their son and a police department's understandable need to protect confidential materials gathered in the course of a criminal investigation, all the more compelling and of substantial public interest.

{2} During litigation Plaintiffs sought to discover the police department's investigation files. Although City Defendants provided Plaintiffs with approximately one thousand three hundred and seventy-seven pages of documents related to their internal investigation, City Defendants objected to producing material related to its on-going criminal investigation. The district court declined to compel production of the entire criminal investigation file, concluding the materials are privileged. A majority of the Court of Appeals reversed the district court, holding that City Defendants cannot claim executive or public interest privilege. Although our rules and constitution do not presently recognize an executive or public interest privilege in the Santa Fe Police Department, we believe portions of the criminal investigation files may still be immune from discovery. Whether the documents are discoverable requires the district court to balance the competing interests between plaintiffs' legitimate discovery requests and law enforcement's need to protect on-going criminal investigations. Accordingly, we remand to the district court for proceedings consistent with this opinion. Because we believe the public interest in New Mexico requires a comprehensive law enforcement privilege which provides some protection against unfettered disclosure of materials obtained by law enforcement during a criminal investigation, we also take this opportunity to refer this matter to our Rules of Evidence Committee to recommend such a privilege.

**I. BACKGROUND AND PROCEDURE**

{3} During discovery, City Defendants objected to some of Plaintiffs' discovery requests on the grounds that the requested information and materials were part of the on-going criminal investigation into Robbie's disappearance, and disclosure would compromise and prejudice the investigation. Plaintiffs filed a motion to compel disclosure. The district court denied the motion to compel based on executive privilege, public policy, and the factors outlined in *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa.1973) (describing "executive privilege" and the factors to consider in determining whether a privilege exists for requested materials), *partially superseded by rule* on other grounds as stated in *Crawford v. Dominic*, 469 F.Supp. 260

---

1. Since the complaint was originally filed, Plaintiff Rudy Romero passed away and his estate, through personal representative Evelyn Romero, was substituted as plaintiff.

(E.D.Pa.1979). Recognizing that its order "involves a controlling question of law for which there are substantial grounds for difference of opinion," the district court certified the matter for interlocutory appeal as provided under NMSA 1978, § 39–3–4 (1971).

{4} The Court of Appeals accepted the interlocutory appeal and in an unpublished opinion, a two-judge majority of the Court of Appeals reversed the denial of the motion to compel, holding that the City Defendants could not invoke executive privilege because the executive department, as defined by the state constitution, did not include municipalities. The Court of Appeals rejected a "public interest" privilege, because although federal courts have recognized the privilege, "our Supreme Court has not recognized such a privilege and we cannot anticipate that they will do so." The dissenting opinion expressed concern that "the trial court was too quick to completely uphold Defendants' assertion of privilege and the majority is too quick to completely reject it."

{5} City Defendants petitioned this Court to reverse the Court of Appeals, advancing two main arguments. First, they urge us to recognize a "common law public interest privilege" that would preclude the production of police investigatory materials during civil litigation. Second, and as an alternative theory, City Defendants contend that public policy demands that the records of an on-going criminal investigation be confidential and subject only to limited disclosure. Plaintiffs argue that no law enforcement privilege exists, and if this Court deems some of the police files to be confidential, a balancing of interests should apply in determining whether the requested materials are discoverable.

## II. DISCUSSION

 {6} Discovery orders are generally reviewed for abuse of discretion. *Pub. Serv. Co. of N.M. v. Lyons*, 2000–NMCA–077, ¶ 10, 129 N.M. 487, 10 P.3d 166. However, we review the trial court's construction of the law of privileges de novo. *Id.* (citing *N.M. Right to Choose/NARAL v. Johnson*, 1999–NMSC–028, ¶ 7, 127 N.M. 654, 986 P.2d 450).

## A. OUR CONSTITUTION AND COURT RULES DO NOT RECOGNIZE A LOCAL LAW ENFORCEMENT PRIVILEGE

 {7} Generally, a person is required "to disclose any information which he may possess that is relevant to a case pending before a court of justice." *State ex rel. Att'y Gen. v. First Judicial Dist. Court*, 96 N.M. 254, 257, 629 P.2d 330, 333 (1981) (citing *Ammerman v. Hubbard Broad., Inc.*, 89 N.M. 307, 551 P.2d 1354 (1976)). There are exceptions to this general rule, found in the privilege against self-incrimination in the United States and New Mexico constitutions as well as other evidentiary privileges. *State ex rel. Att'y Gen.*, 96 N.M. at 257, 629 P.2d at 333. This court's " 'constitutional power under N.M. Const. art. III, section 1 and art. VI, section 3 of superintending control over all inferior courts carries with it the inherent power to regulate all pleading, practice and procedure affecting the judicial branch of government.' " *Id.* (quoting *State ex rel. Anaya v. McBride*, 88 N.M. 244, 246, 539 P.2d 1006, 1008 (1975)). "Pursuant to the exercise of this power, we have adopted a comprehensive set of rules of evidence which govern proceedings before the courts," including evidentiary privileges. *Id.*

{8} The New Mexico Rules of Evidence generally follow the federal rules of evidence, but "New Mexico's approach to privileges is a special product of our state law jurisprudence." *Lyons*, 2000–NMCA–077, ¶ 12. Federal Rules of Evidence 501 provides:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or … statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of common law as they may be interpreted by the courts of the United States in light of reason and experience.

In contrast, New Mexico Rules of Evidence 11–501 states:

Except as otherwise required by the constitution, and except as provided in these rules or in other rules adopted by the supreme court, no person has a privilege to:

A. refuse to be a witness; or

B. refuse to disclose any matter; or

C. refuse to produce any object or writing; or

D. prevent another from being a witness or disclosing any matter or producing any object or writing.

Based on the difference between the New Mexico rule and the federal rule, we have held "[t]he fact that New Mexico did not follow the approach of Congress but instead limited the privileges available to those recognized by the Constitution, the Rules of Evidence, or other rules of this Court manifests the abrogation and inapplicability of the common law evidentiary privileges." *State ex rel. Att'y Gen.*, 96 N.M. at 260, 629 P.2d at 337.

{9} In questioning the wisdom of our case law that precludes the adoption of common law privileges, City Defendants suggest we follow the reasoning of the dissent in *State ex rel. Attorney General*. There, two justices concluded that common law privileges are still available to the court when the subject matter is not otherwise covered in the Constitution or court rules. *Id.* at 263, 629 P.2d at 339 (Easley, C.J., and Federici, J., dissenting). City Defendants urge us to agree that we retain the authority to adopt common law privileges, and further, that we should overrule *State ex rel. Attorney General* to the extent it declines to recognize a public interest privilege, which defendants assert is similar to a law enforcement privilege. The reasons supporting their request seem compelling. They assert that the privilege is necessary to protect important public interests such as bringing perpetrators of serious crimes to justice and "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of the City of N.Y.*, 856 F.2d 481, 484 (2d Cir.1988).

{10} With respect to this case, City Defendants claim that disclosure of police investigatory materials would jeopardize Robbie's safe return if he is still alive, as well as jeopardize the Santa Fe Police Department's efforts to solve the case and irreparably jeopardize the eventual prosecution of the perpetrator(s). Jeopardy is likely, they contend, because disclosure of investigatory information could assist the perpetrator(s) to destroy critical evidence and threaten the safety of confidential informants who provided evidence to the Santa Fe Police Department. As an example of information that should be protected, City Defendants presented testimony describing an investigatory report containing identities of confidential informants, confidential investigative methods, information about individuals accused but not charged with a crime, and information only the perpetrator(s) would know.

{11} There is no question that City Defendants have raised an issue of pressing public concern, and that there is great force to their need to protect confidential police investigatory materials in an active criminal investigation from discovery in civil litigation. However, given the clear directive of Rule 11–501, we remain compelled to decline to recognize common law privileges. Until we decide to change the rule to more closely resemble Federal Rule of Evidence 501, we must follow the framework provided in New Mexico's Rule 11–501 to determine whether a public interest or law enforcement privilege exists. *Albuquerque Rape Crisis Ctr. v. Blackmer*, 2005–NMSC–032, ¶ 8, 138 N.M. 398, 120 P.3d 820. Unless such privileges are required by the constitution, or provided for in the rules of evidence or other court rules, these privileges do not exist. *State ex rel. Att'y Gen.*, 96 N.M. at 257, 629 P.2d at 333.

{12} The New Mexico Constitution does not expressly describe any privileges other than the right against self-incrimination in Article II, Section 15. A "public interest" or "law enforcement" privilege would have to be implicit from language in the Constitution. *See State ex rel. Att'y Gen.*, 96 N.M. at 257–58, 629 P.2d at 333–34. In that case we recognized the existence of an executive privilege based on Article III of the New Mexico Constitution, which describes the separation of powers among the three departments of state government. Because "[c]ertain rights

are implied as being inherently necessary to foster and give meaning to the intent of the Constitution," *id.* at 257, 629 P.2d at 333, we concluded that "[i]nherent in the successful functioning of an independent executive is the valid need for protection of communications between its members." *Id.* at 258, 629 P.2d 330. Thus, we characterized executive privilege as "a recognition by one branch of government, the judiciary, that another co-equal branch of government, the executive, has the right not to be unduly subjected to scrutiny in a judicial proceeding where information in its possession is being sought by a litigant." *Id.* In the same case, however, we rejected the concept of a "public interest" privilege that would protect from disclosure communications between government officials and private individuals since we could find no basis for such a privilege in the Constitution or the Rules of Evidence. *Id.* at 260, 629 P.2d at 336.

{13} Similarly, we can find no implied privilege in the Constitution for the protection of local law enforcement investigatory materials. The City Defendants are a municipality and a branch of a municipality, and municipalities were not contemplated in the Constitution as part of the executive branch. *State ex rel. Chapman v. Truder,* 35 N.M. 49, 52, 289 P. 594, 596 (1930) (ruling that the New Mexico constitutional provisions for separation of powers apply only to state offices, not municipalities). Even after New Mexico amended its Constitution in 1970 to provide for "home rule" municipalities having broad legislative powers, we have consistently held that traditional separation-of-powers doctrine does not apply to municipalities. *Bd. of County Comm'rs of Bernalillo v. Padilla,* 111 N.M. 278, 283, 804 P.2d 1097, 1102 (Ct.App. 1990) (stating that the dangers of tyranny when one branch of government assumes the powers of another are diminished for a subordinate level of government, and therefore Article III, Section 1 of New Mexico Constitution does not apply to local governments). Since the theory of separation of powers led to the recognition of the executive privilege, we are not persuaded our Constitution permits us to conclude a similar privilege is inherently necessary to the successful functioning of city law enforcement agencies.

Thus, we do not recognize an express or implied law enforcement privilege in the New Mexico Constitution.

{14} With no relevant privilege in the New Mexico Constitution, we examine our Rules of Evidence for a law enforcement privilege. *See Lyons,* 2000–NMCA–077, ¶ 13; *see* Rules 11–502 to 11–514 NMRA. We note that two of the privileges are similar to a "public interest" or "law enforcement" privilege. Rule 11–502 may privilege some of the investigative materials in this case, since it provides a privilege for reports required to be made by law. Rule 11–510 provides a privilege from disclosing the identity of an informant. Rule 11–510 "is a recognition by the judiciary that certain privileges are necessary to aid law enforcement officers and the Legislature in obtaining information through investigations . . . without having to be concerned with being subpoenaed into court." *State ex rel. Att'y Gen.,* 96 N.M. at 259, 629 P.2d at 335. However, as City Defendants point out, this rule does not privilege the investigative materials themselves. Thus, while our Rules of Evidence do provide some protection for individual pieces of investigatory materials and information, these rules do not afford complete protection from disclosure of all on-going criminal investigative materials obtained by law enforcement. Since we do not identify an express or implied law enforcement privilege in the Constitution or our court rules, we are unable to recognize the existence of such a privilege.

**B. ALTHOUGH NOT PRIVILEGED, ON–GOING CRIMINAL INVESTIGATION MATERIALS MAY BE IMMUNE FROM DISCOVERY**

{15} Nevertheless, we do not believe the absence of a law enforcement privilege means confidential police investigatory materials, such as reports containing confidential investigative methods, information about individuals accused but not charged with a crime, and information only the perpetrator(s) would know, are completely unprotected from disclosure under our rules of evidence and civil procedure. Our case law and Rule 1–026 NMRA require courts to take an active role in determining the proper balance

between the conflicting needs of discovery and confidentiality. For example in the case of *In re Motion for a Subpoena Duces Tecum*, 94 N.M. 1, 2, 606 P.2d 539, 540 (1980), we held that where there is a matter of great public concern as expressed by the legislature, we "will not hesitate to exercise [our] power of superintending control to protect the confidentiality of ... information against unwarranted disclosure." We believe the legislature has expressed a matter of great public concern when it comes to the disclosure of materials pertaining to an on-going criminal investigation. Therefore, exercising our power of superintending control, we proceed to examine means by which our rules may prohibit the disclosure of confidential information developed by law enforcement during an on-going criminal investigation.

{16} In examining the means by which confidential materials have been entitled to protection from disclosure, *Southwest Community Health Services v. Smith* is instructive. 107 N.M. 196, 198–99, 755 P.2d 40, 42 (1988). In *Southwest Community Health Services* we held that a statute making medical peer review organization records immune from discovery did not create an evidentiary privilege and therefore did not conflict with our rules of privilege. *Id.* In addition, we stressed that the confidentiality created by the statute was not intended by the legislature to apply only to the production of evidence for civil litigation. *Id.* at 199, 755 P.2d at 43. We recognized the potential conflict between two separate branches of government and sought a way to accommodate the interests of both branches.

> While the legislative decision to prohibit notoriety of medical peer review proceedings is a constitutional exercise of the essential legislative function to promote the health and welfare of New Mexico's citizens, the Court cannot ignore an overbroad implementation of the confidentiality provision which would impinge upon the right of litigants to have their disputes decided on relevant and material evidence. It is not a matter of the statute being unconstitutional but rather a recognition, when litigation is at issue, that conflicting constitutional powers by two separate and

independent branches of government are being exercised.

*Id.* at 200, 755 P.2d at 44 (emphasis omitted). We clearly stated that had the statute created an evidentiary privilege, it would be invalid. We then exercised our judicial authority to balance the conflicting constitutional interests by describing the process to be used when invoking the statute that immunized evidence from discovery. *Id.*

{17} We believe the approach used in *Southwest Community Health Services* is applicable here. While we have superintending control over procedures used in the courts, the legislature describes the public policies of the state through statutes. Just as we held that the statute at issue in *Southwest Community Health Services* created an immunity from discovery, so too we hold that New Mexico's Inspection of Public Records Act (IPRA), NMSA 1978 § 14–2–1 (2005), creates a similar immunity from discovery. IPRA announces a broad policy statement that "[e]very person has a right to inspect public records of this state," but then lists several specific exceptions. § 14–2–1(A). The exception germane to this case precludes the following from public inspection:

> law enforcement records that reveal confidential sources, methods, information or individuals accused but not charged with a crime. Law enforcement records include evidence in any form received or compiled in connection with a criminal investigation or prosecution by a law enforcement or prosecuting agency, including inactive matters or closed investigations to the extent that they contain the information listed in this paragraph.

§ 14–2–1(A)(4). Within IPRA the legislature has expressed its intent to protect from disclosure police investigatory materials in an on-going criminal investigation.

{18} Clearly, the primary purpose of the IPRA is to provide access to public records rather than "to create an evidentiary shield behind which the government can hide." *In re Marriage of Daniels*, 240 Ill.App.3d 314, 180 Ill.Dec. 742, 607 N.E.2d 1255, 1263 n. 2 (1992). IPRA's exclusion of law enforcement records from public inspection does not purport to create an evidentiary privilege, nor

does it contemplate use of law enforcement records in civil litigation. *State ex rel. Att'y Gen.,* 96 N.M. at 260, 629 P.2d at 336 (stating that the Right To Know statute "did not, nor was it intended to, create a new evidentiary privilege applicable to discovery"). Instead, IPRA is used here to guide the court in appraising public policy concerns based on legislation enacted by the legislature pursuant to its general police powers. Using an analysis similar to the approach we employed in *Southwest Community Health Services,* we conclude that the IPRA exception for law enforcement records in a criminal investigation is illustrative of a vitally important public policy concern, leading to an immunity from discovery for some police investigative materials in civil litigation.

{19} This immunity is not absolute. Although we will recognize limited immunity from discovery we will not "impinge upon the right of litigants to have their disputes decided on relevant and material evidence." *Southwest Cmty. Health Serv.,* 107 N.M. at 200, 755 P.2d at 44. Courts will be required to balance the interests at stake. Under the balancing outlined in *Southwest Community Health Services,* the party seeking to preclude disclosure has the burden of proving the information sought to be protected is confidential under a policy interest which may make the information immune from discovery. *Id.* at 200, 755 P.2d at 44. In this case, City Defendants have the burden of proving the information requested by Plaintiffs is confidential because such information meets the policy interest expressed in Section 14–2–1(A)(4). An *in camera* examination of the materials and an evidentiary hearing to determine whether the requested material is immune, may be necessary. However, even if the material is confidential, the party seeking the evidence may be entitled to the information if they satisfy the trial court that "the information constitutes evidence which is critical to the cause of action or defense." *Id.* at 201, 755 P.2d at 45. Under this latter inquiry, the trial court must determine whether "the success or failure of a litigant's cause of action or defense would likely turn on the evidence adjudged to fall within" the immunity. *Id.* In addition, the trial court should consider whether the

evidence is not otherwise available by the exercise of due diligence, as well as whether the public's interest in preserving confidentiality does not outweigh the specific needs of the litigant. *See State ex rel. Att'y Gen.,* 96 N.M. at 258, 629 P.2d at 334 (citing *U.S. v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)).

{20} With respect to assessing whether the public interest outweighs the needs of the litigant, the factors in *Frankenhauser,* 59 F.R.D. at 344, will aid the trial court in its analysis. These factors are:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

Although these factors were articulated in the context of a civil rights action against police, we believe the factors will also be helpful to consider in the context of discovery for other civil litigation involving on-going criminal investigations.

{21} The procedure described above is intended to provide general guidelines for the trial court as it reevaluates whether the discovery requested by Plaintiffs should be produced by City Defendants. We note that Rule 11–510 (privileging the identity of confidential informants) and Rule 11–502 (privi-

leging some reports required to be made by law), may apply to some of the materials requested in this case. In addition, "we do not tell the trial court when it is appropriate to issue protective orders under Rule 26 of the New Mexico Rules of Civil Procedure, N.M.S.A.1978 to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." *State ex rel. Att'y Gen.*, 96 N.M. at 261, 629 P.2d at 337. We note only that the approach described in this case is consistent with the spirit of Rule 1–026(C).

## III. CONCLUSION

{22} We anticipate that the balancing guidelines described above address Plaintiffs' legitimate discovery needs and City Defendants' need to protect the most sensitive of police investigation materials in the Robbie Romero case. In addition to remanding the discovery requests by Plaintiffs to the district court for proceedings consistent with this opinion, we also refer this matter to our Rules of Evidence Committee for discussion and review of the possible need for a comprehensive law enforcement privilege. We also note that "the application of this statute as construed today by this Court to the case at bar does no violence to *Marquez v. Wylie,* 78 N.M. 544, 434 P.2d 69 (1967), which held that rules adopted by this Court are not effective to change the procedure in any pending case." *Southwest Cmty. Health Serv.,* 107 N.M. at 201, 755 P.2d at 45. The IPRA statute was in effect prior to the initiation of this lawsuit, and our opinion merely recognizes the limited immunity from discovery created by that statute. *Id.* ("Our opinion today merely construes a pre-existing statute; it does not adopt a change in procedural rules.").

{23} IT IS SO ORDERED.

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA and PETRA JIMENEZ MAES, Justices.